J. G. HARING ET AL. v. J. W. SHELTON ET AL.

No. 1968. Decided November 10, 1909.

1.—Independent Executrix—Power to Sell Land—Debts—Burden of Proof.

To support a conveyance of land belonging to an estate, by an independent executrix not authorized to sell by the terms of the will, the existence of debts against the estate was necessary, and the burden of proof was on the purchaser to show that such conditions existed as would have authorized the probate court to order the sale of the land. (P. 13).

2.—Same—Evidence—Declarations.

In proof of the existence of debts against the estate authorizing an inde-

pendent executrix to make sale of its lands, the declarations of such executrix subsequent to the sale are not admissible.   (P. 13).

### 3.—Will—Devise—Estate during Widowhood.

A devise of land by testator in the following terms: "It is my will that my said wife, C. C. Shelton, and her heirs, shall hold said lands in fee simple forever, or so long as she shall remain a widow," is held to vest in the devisee an estate which was terminated by her subsequent marriage.   (Pp. 13-15).

### 4.—Same—Conveyance—Remarriage.

Where the estate in lands vested by will in the widow of testator was terminable by her second mariage, purchasers from her took no greater estate, and their title terminated by her remarriage after making such conveyance. (P. 15).

Error to the Court of Civil Appeals for the First District in an appeal from Houston County.

Shelton and others sued Haring and another for the recovery of land, and had judgment which was affirmed on appeal by defendants, who thereupon obtained a writ of error.

*Nunn & Nunn,* for plaintiffs in error.—If the absolute right of property is given to the first taker, the limitation over is void, and where property is given in clear language sufficient to convey an absolute fee, the interest thus given shall not be taken away, cut down, or diminished by any subsequent vague and general expressions. Speairs v. Ligon, 59 Texas, 234; Hawes v. Foote, 64 Texas, 31; Bernstein v. Bramble, 8 L. R. A. (N. S.), 1028; Howard v. Carusi, 109 U. S., 730; Potter v. Couch, 141 U. S., 315; Roberts v. Lewis, 153 U. S., 378.

The fee simple title to the land described in the will of W. M. Shelton, including the land in controversy, by the proper probate of such will, having vested in C. C. Shelton, and she having authority to sell and convey such land during her widowhood, and this sale and conveyance to J. G. Haring being made by her during her widowhood, it was not necessary to show the existence of debts against the estate of W. M. Shelton, and that such conveyance was made for the purpose of paying the same.   Terrell v. McCown, 91 Texas, 254; Faulk v. Dashiell, 62 Texas, 650, and other authorities therein cited.

*Aldrich & Crook,* for defendants in error.—The devise of an absolute estate in fee may be qualified by a subsequent limitation upon contingency in the same will.   Smith v. Ballard, 77 S. W., 714; Gannon v. Peterson, 55 L. R. A., 701; 49 Cent. Digest, 1844, 1863; Daniel v. Thompson, 53 Ky., 662; Freeman v. Steiner, 107 Ill., 125; 56 Ala., 287; Herd v. Catron, 37 L. R. A., 731.

Where by one clause in a will property is devised by words prima facie importing an absolute estate, and by a subsequent clause is given in remainder to another, the first devisee takes only a life estate, and the limitation is valid.   49 Cent. Digest, 1814-1819, 1825; 19 Ohio, 490; 70 Ala., 288; 19 N. Y., 344.

A devise to a wife in language importing an absolute fee, coupled with a proviso "or so long as she shall remain a widow," creates a contingent fee simple estate, determinable upon the marriage of the

devisee. Littler v. Dielmann, 48 Texas Civ. App., 392; McMurray v. Stanley, 69 Texas, 227; Knight v. Malony, 9 L. R. A., 573; O'Brien v. O'Leary, 64 N. H., 332; Corby v. Corby, 85 Mo., 371; Appeal of Urich, 27 Am. Rep., 707; Gourdin v. Schrewsbury, 11 S. C., 1; Tilley v. King, 109 N. C., 461; Appeal of McGuire, 11 Atl., 72; Marwick v. Andrews, 25 Me., 525; Sheftall v. Roe, 30 Ga., 453; Siegwall v. Siegwall, 37 Ill., 430; Woodman v. Madigan, 58 N. H., 6.

Mr. Justice Brown delivered the opinion of the court.

From the opinion of the Court of Civil Appeals we copy the following statement of the case:

"In this case J. W. Shelton, et al., sue J. G. Haring in trespass to try title to recover a tract of land. The First National Bank of Crockett intervened setting up that it had acquired Haring's title. Upon trial without a jury the plaintiffs had judgment for an undivided four-ninths of the land sued for and from the judgment defendants appeal.

"Conclusions of fact and law by the court were filed. The case turned upon the validity of a deed to Haring by C. C. Shelton, surviving widow, in her own right and as independent executrix of W. M. Shelton, ancestor of plaintiffs, to convey the land, and the effect of this deed depended upon (1) the existence of debts against the estate of the testator at the date of the deed, to authorize the independent executrix to sell, and (2) upon the estate vested in her as devisee by the terms of the will, as authorizing her to convey in her own right. If the existence of such debts was shown, and if not, if the will vested in her the entire estate instead of an estate limited to her widowhood, her deed conveyed the land and plaintiffs in either event were not entitled to recover. The court found on both issues against the defendants.

"W. M. Shelton was twice married. Appellees (plaintiffs below) are some of the children of the first marriage. Shelton and his first wife owned in community a tract of land in Falls County. After the death of the first wife and the second marriage to C. C. Shelton, Shelton exchanged the Falls County land for land in Houston County, of which the land in controversy is a part, taking the title to the Houston County land to himself and his second wife, C. C. Shelton. Shelton died leaving a will which was duly probated, wherein he named his wife independent executrix, after devising to her his entire estate, in the following language:

"'I give and devise unto my beloved wife, C. C. Shelton, her heirs and assigns forever, the following described tracts or parcels of land, to wit: A tract of 51 acres in Houston County, Texas, about 4 miles N. W. from the town of Crockett, and fully described in a deed to me by H. F. Sanders, bearing date June 11th, 1892.

"'Also a tract of 210 acres of land in said county and State, on the Wm. White headright survey, about 4 miles N. W. from the town of Crockett, and fully described in the above mentioned deed from H. G. Sanders to me, except 50 acres heretofore sold by me to Alex Anderson, which is reserved out of the said 210-acre tract, said two

tracts being formerly known as the West Christian place, and now occupied by me and my said wife as our homestead, and it is my will that my said wife, C. C. Shelton, and her heirs shall hold said lands in fee simple forever, or so long as she shall remain a widow.'

"No express power to sell is given by the will. Shelton died in 1893. In 1895, two years after Shelton's death, Mrs. Shelton in her own right, and as independent executrix, executed to J. G. Haring a deed to the land in controversy, reciting that it was done to pay debts of the estate. Mrs. Shelton married again in 1903. The suit was filed in 1904. She died after the suit was filed and before trial."

It is unimportant to the disposition of this case whether the property in question was the community property of Shelton and his first wife or not, unless we shall find it necessary to reverse the judgment of the Court of Civil Appeals upon one or both of the following propositions which are contended for by the plaintiffs in error in this case:

(1) It is claimed that the trial court and Court of Civil Appeals erred in finding and holding that there were no debts against the estate of Shelton at the time of the sale made by his widow to Haring, and, therefore, that the sale was not made for the purpose of paying the debts due from Shelton's estate.

(2) It is contended by plaintiffs in error that the trial court and Court of Civil Appeals erred in holding that the will of Shelton did not vest an estate in fee simple in his widow, C. C. Shelton.

The defendant and intervener pleaded the statute of limitations of three and five years, but they did not deraign title from the State, therefore, the three years statute did not apply and they claimed the five years statute of limitation under the deed from Mrs. C. C. Shelton but did not show the date when it was recorded. Having failed to show themselves entitled to the bar of either period of limitation it is not necessary for us to pass on the assignment which presents that question.

The second and third assignments of error assert that the trial court and Court of Civil Appeals erred in holding that there were no debts against the estate of W. M. Shelton. There being no provision in the will authorizing the sale by the executrix, the burden of proof was on the purchaser to show that at the time of the sale such conditions existed as would have authorized the probate court to order the sale of the land. (Freeman v. Tinsley, 40 S. W., 835; Roberts v. Connellee, 71 Texas, 16; Mays v. Blanton, 67 Texas, 247.) The evidence introduced upon this question was not so conclusive as to authorize this court to say that the trial court and Court of Civil Appeals erred in holding that the evidence did not show that debts existed against the estate of W. M. Shelton.

At the trial the defendant and intervener offered to prove the declarations of Mrs. C. C. Shelton, made after her second marriage and after the sale of the land, to the effect that debts existed against her husband's estate at the time the sale was made, which evidence the trial court excluded. There was no error in this ruling. The testimony offered was hearsay and therefore not admissible.

The principal questions in this case are, what title did Mrs. C. C.

Shelton take under the terms of the will, and what interest did she convey to J. G. Haring by her deed to him? The will of W. M. Shelton contained the following provisions: "I give and devise unto my beloved wife, C. C. Shelton, her heirs and assigns for ever, the following described tracts of land." Then follows the description of the tracts of land in that paragraph of the will and in the succeeding paragraph. After the description of the property we read in the will: "It is my will that my said wife, C. C. Shelton, and her heirs, shall hold said lands in fee simple forever, or so long as she shall remain a widow." The language first quoted was sufficient to vest in Mrs. C. C. Shelton the title in fee simple to the interest of the testator in the land and did so vest that title in her, but, by the language which was used in the succeeding paragraph of the will, the estate was qualified and converted into a fee simple estate determinable upon a future contingency; that is, upon the second marriage of Mrs. C. C. Shelton. "The intention of the testator is the first and great object of inquiry in the construction of wills, and it must govern, provided it be not inconsistent with the rules of law." (Laval v. Staffel, 64 Texas, 372.) It is evident that Shelton did not intend to give to his wife the lands in question, free of the claims of anyone in the future, but it was his purpose that his widow should have the property as her own, subject to the condition that she should remain a widow.

In the case above cited the testatrix used this language: "I give and bequeath to my son, Alcide Francois Phaneuf, the store and lot which I own in the city of San Antonio, on the north side of the Main street, and on the south of the San Antonio River, between lots belonging to Mr. August Nette, druggist (on the east and west). This legacy is made with the following restrictions, namely: That before my said son shall have completed his twenty-fifth year, he shall have no other right over the real estate and fixtures which I bequeath to him than to receive and dispose of the revenue thereof, without having the right in any manner to incumber, mortgage or sell the said property before he shall have completed the twenty-fifth year of his age; and if my said son should leave this world (which God forbid) before having reached that age, in that case the lot, house, or store aforesaid shall pass in full right and free from all charges in full property to my aforesaid daughter, Maria Reine Celine Phaneuf." The court held that that provision which restrained the devisee from selling or mortgaging the property was void, but also held that the provision which limited the estate granted to Alcide was lawfully limited by the provision that, if he should die before he reached his twenty-fifth year, the property should pass to another, and the court said: "The provision, therefore, that the estate should pass to the appellant in case of the death of Alcide before reaching the age of twenty-five years, was one which the testatrix was authorized to make, and there is nothing in the restraint upon alienation that can prevent this will and intention of the testator from being carried out. Treating the provision as to alienation as void, we must read the will as if no such restriction had been imposed. Alcide is then left with the power of selling or

mortgaging all the interest or title he held in the property under the will, that is, a fee simple estate liable to be defeated upon the contingency of his dying before becoming twenty-five years of age. To this extent only could he have sold or incumbered the estate had the restriction as to alienation not been made; the insertion of the void condition could not certainly have given him greater power over the estate than he would have had without it."

"The mortgage to Grothaus, therefore, furnished him security only to the extent of Alcide's title to the land, as above stated. Grothaus took the risk of Alcide's living to the age of twenty-five years. If that contingency happened, the entire fee simple estate was pledged to him for the payment of his debt; otherwise, his security could last only to the death of Alcide, and if the property in the meantime had been sold in satisfaction of the mortgage, the title of the purchaser would have expired with the death of Alcide."

That case is very similar in its facts to the one under consideration and conclusively establishes the fact that in this case Mrs. Shelton took the fee simple title, determinable upon her marriage and that the plaintiffs in error, the bank and Haring, took the title of Mrs. Shelton and no more, which was terminated in their hands by her second marriage, the same as it would have been if the title had remained in her. No claim is made that they acquired any rights as innocent purchasers from Mrs. Shelton, and, indeed, the facts show that no such claim could exist, for their title was derived through the will by which the limitation was plainly expressed and the purchaser from Mrs. Shelton were charged with notice of the terms of the will under which they derived their right.

The judgments of the District Court and Court of Civil Appeals are affirmed.

*Affirmed.*