### ADAMS et al. v. HENRY et al.    (No. 1807.)

(Court of Civil Appeals of Texas. Amarillo. May 4, 1921.) .

1. Wills ☞665—Right of devisee not affected by his statement before testatrix's death nor by subsequent belief of one entitled to benefit under condition of will.

One to whom a will devised land with provision that his sisters were to have a home there when needed, and that if he did not comply with the condition, but refused to give them a home when sick or out of employment, the land should be divided equally between them, having after death of testatrix accepted under the will, his interest in the land was not affected either by any statement of his before testatrix's death, when his rights were not fixed, that his sisters should not have a home there, nor by the fact that after such death one of them, who would have had a right to go there for a home, did not seek it, believing from what he had so previously said that it would be refused.

2. Wills ☞658 — Devise held to vest fee on condition subsequent.

A will, which gave land to testatrix's nephew "H. (with express understanding that his sisters are to have a home there whenever they need one, I put this in so my brother's children will all have a home to go to should misfortune come to them), to have and to hold his heirs and assigns forever provided he comply with the conditions herein mentioned, but if he refuses to give them a home (I do not mean he is to support them, but a home free of charge when sick or out of employment) it shall be divided equally between them," held not to create a condition precedent, but to vest the fee in the nephew, on a condition subsequent, a defeasance in case of a refusal of a home when needed and requested; Rev. St. art. 1106, providing that an estate devised shall be deemed in fee

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

simple if a lesser be not limited by express words or does not appear by construction or operation of law, and the words in parentheses being part of the defeasance clause.

**3. Wills ☞665 — Word "refuse" in condition of will cannot be construed as "fail."**

As words can be changed in a will only when it will effectuate a clearly apparent intent of testator, the word "refuse" in a devise with provision that, if devisee refuse a home to his sisters when sick or out of employment, the land shall be divided equally between them, cannot be changed to "fail."

Appeal from District Court, Grayson County; Silas Hare, Judge.

Suit by Lula Adams and others against Lizzie Henry and another. Judgment for defendants, and plaintiffs appeal. Affirmed.

Webb, Cantrell & Webb and Wood, Jones & Hassell, all of Sherman, for appellants.

J. H. Randell, of Denison, and McReynolds & Hay, of Sherman, for appellees.

HUFF, C. J. We adopt the statement of the trial court in his findings of fact and conclusions of law:

"I. Suit instituted December 8, 1915, by Lula Adams and husband, Ava Throckmorton and husband, Katie Parsons and husband, and Bert Mitchell, as plaintiffs, against Lizzie Henry and Frankie B. Henry, defendants, in trespass to try title and partition 160 acres of land in Grayson county. By amendment plaintiffs asked that the will of Mrs. Mary McCloy be construed by the court and in the alternative that judgment be entered decreeing plaintiffs the right of a home on said land. Defendants duly entered a general denial, plea of not guilty, and specially replied to the allegations in plaintiff's petition.

"II. Mary McCloy was the owner of the land described in plaintiffs' petition, by deed from Isaac Linley, of date December 1, 1882, recorded in Volume 55, p. 307, deed records of Grayson county.

"III. On September 17, 1894, Mary McCloy made the will which is under consideration in this case.

"IV. Mary McCloy died October 9, 1904, and said will was duly probated in the state of Michigan, and is recorded in Volume 236, p. 67, Grayson county deed records, whereby she disposed of the land in controversy in this suit, and the following portion of the will germane to this inquiry reads as follows: 'I give and bequeath to my brother's wife, Jane Henry, all of my real estate situated in the state of Texas, consisting of 160 acres of land in Grayson county, Texas, being all of the quarter No. 4 and being the S. E. quarter of section 2, University League No. 12, to have and to hold during her lifetime. At her death to her son, Frank Henry (with express understanding that his sisters are to have a home there whenever they need one, his sister, Jessie Mitchell's three children included. I put this in so my brother's children will all have a home to go to should misfortune come to them in life's journey). To have and to hold his heirs and assigns forever

provided he comply with the conditions herein mentioned, but if he refuses to give them a home (I do not mean he is to support them, but a home free of charge when sick or out of employment) it shall be divided equally between them.'

"V. The parties referred to in the foregoing extract from the will of Mrs. McCloy are Jane Henry (wife of the brother of said Mary McCloy); Frank Henry (son of Jane Henry); Ada Throckmorton (daughter of Jane Henry and sister of Frank Henry); Lula Adams (daughter of Jane Henry and sister of Frank Henry); Kate Mitchell Parsons (granddaughter of Jane Henry and daughter of Jessie Mitchell); H. B. Mitchell (grandson of Jane Henry and son of Jessie Mitchell). There were other children of Jane Henry, also of Jessie Mitchell, but they died without issue, and their sole heirs are parties to this suit.

"VI. Jessie Mitchell died June 4, 1895.

"VII. Jane Henry died August 3, 1913.

"VIII. Frank Henry died July 21, 1917, leaving as his sole surviving heirs a wife, Lizzie Henry, and a child, Frankie B. Henry. This child was born after the death of said Frank Henry.

"IX. Frank Henry and his wife were occupying the land in controversy as a homestead at the time of his death, and the surviving wife, Lizzie Henry, and child, Frankie B. Henry, are now and ever since his death have been occupying it as a home.

"X. Bert Mitchell testified that his mother made application for a home on this property when she was sick in Sherman. This was before the death of Mrs. McCloy. Bert Mitchell further testified that at the time of his mother's death his sister made application for a home on this property. Furthermore, that at this time he has no home of his own. Mrs. Ada Throckmorton testified that she is 63 years old; owns a piece of land in Oklahoma that is heavily mortgaged, and that she never made application to Frank Henry for a home on this property. Mrs. Lula Adams testified that she never lived on this property after Mrs. McCloy's death; used to go there every year and sometimes oftener; that she has no property; that she has no home and could use this property; that she has a husband who supports her; that she knew about the will ever since it was made. Her mother had a copy of it in her trunk, and witness had heard her mother read the will to Frank Henry, and Frank Henry knew of the will before Mrs. McCloy's death. Mrs. Kate Parsons testified that she is the daughter of Jessie Mitchell; that her mother had been sick about two months when she died in Sherman; that since Mrs. McCloy's death witness had needed a home altogether about two or three years; that the reason she did not go on the place and make application for a home there was that Frank Henry told her to leave and never come back; that Frank Henry had refused witness and the mother of witness and the sister of witness the right to occupy this place as a home; these refusals were all before the death of Mrs. McCloy; that no application had been made to Frank Henry by witness for permission to live on the place since the death of Mrs. McCloy for the reason that

the witness knew from previous conduct and statements of Frank Henry that such application would be refused; that witness had no property and is in need of this property as a home. Mrs. Lizzie Henry testified that she is the surviving wife of Frank Henry. They married December 8, 1914, and he died July 21, 1915. The child was born August 19, 1915; that the defendant Frankie B. Henry is the only living child of the deceased Frank Henry.

"XI. None of the plaintiffs herein have ever made application to Frank Henry for a home upon said premises since the death of Mrs. McCloy. There is no evidence to the effect that either of·the plaintiffs are sick or out of employment, nor is there any evidence that they have ever been sick or out of employment and as a consequence made application to Frank Henry for a home on said premises. There is nothing in this record tending to show that Frank Henry, since the death of Mrs. McCloy, refused to give either of plaintiffs herein a home on this property, free of charge when they were sick or out of employment.

"Conclusions of Law.

"1. The clear interpretation of the will of Mrs. McCloy is:

"(a) A life estate to Jane Henry.

"(b) The right of plaintiffs herein to have a home on said premises when they needed it, and this need is defined to be when they are sick or out of employment, and this right of occupancy extends to each of the plaintiffs during their life and is not restricted to the life of Frank Henry.

"(c) Fee-simple title to Frank Henry, conditioned that he permit the plaintiffs herein to have a home upon said premises free of charge when they are sick or out of employment.

"2. Frank Henry never refused to give plaintiffs a home on said property free of charge when they were sick or out of employment since the death of Mrs. McCloy, and, Frank Henry now being dead, a forfeiture under the terms of the will becomes impossible. The acts and statements of Frank Henry before the death of Mrs. McCloy and before her will became effective cannot be taken as evidence of what his attitude would be after the will became effective. In order for him to be subjected to the forfeiture clause of the will, he must have been called upon to act after the will became effective and when he was in position to act with authority. Declarations of his before the death of Mrs. McCloy before he had any authority to permit or deny them the occupancy of the premises has 'no probative force on the question of what his attitude or conduct would be after the will was given vitality and he was vested with the power to act.

"3. Fee-simple title to this land is vested in the child, Frankie B. Henry, subject to the life estate of the widow, Lizzie Henry.

"4. The plaintiffs herein are not entitled to any of the relief prayed for, for the reason that the conditions set forth in the will which would give them the right of occupancy of the place as a home are not shown to have ever arisen. Should the plaintiffs herein ever need a home on the premises, they are entitled to it free of charge when they are sick or out of employment, but only so long as they are sick or out of employment. This is a right, however, that is personal to them and cannot pass to their heirs or assigns. The said rights of plaintiffs are a charge against the land in controversy, but is not to interfere with the homestead right of the defendant Lizzie Henry.

"5. Therefore the judgment of the court is that the plaintiffs take nothing by their suit and that they be adjudged to pay the costs; that the defendant Frankie B. Henry be vested with the title in fee simple to the land in controversy, subject to the life estate of the defendant Lizzie Henry."

[1] Assignments from 1 to 4, inclusive, present as error the action of the court in sustaining objections to the evidence of Bert Mitchell, to the effect that Frank Henry told Jessie Mitchell, that she nor her children should ever come on the premises in controversy, and his further testimony that he knew of his mother and sister making application to Frank Henry for a home on the premises, and that he refused them and told them they should never have a home on the premises; and rejected the testimony of Mrs. Kate Parsons that her mother with three small children owned no home at the time and made application to Frank Henry for one and he refused them and that they should never come there; also, her testimony to the effect that she had been in need of a home, but did not go on the place and make application because of the previous conduct of Frank Henry towards her mother and her and the sister. The objections made and sustained to the refusal by Henry to permit the parties on the premises was that it ·occurred at a time when he was living with his mother, Jane Henry, and under the express provisions of the will he was not given the use and occupancy of the place and had no right to grant or refuse the parties a home thereon at that time. That at that time the will was not in force and effect. Mrs. McCloy was then alive and no action had been taken on the will or could have been taken at that time. One of the parties, Mrs. Lula Adams, had testified that Frank Henry knew of the will and its terms and that her mother had a copy of Mrs. McCloy's will in her trunk and she had heard her read it to Frank Henry. The evidence shows that Mrs. Jessie Mitchell was one of the beneficiaries under the will and was sick at the time at which it was proposed to show the refusal by Henry had been made to give her a home. The evidence shows at the time of the several requests above offered Mrs. McCloy was then living. It will be observed, however, from the court's finding, that he sets out in substance the testimony which appellant contends was rejected, and the statement of facts shows it was admitted. However, it seems to be the contention of appellant that his then refusal was sufficient to show that he had not complied with the con-

ditions of the will, and we will therefore notice the assignments at this time.

So long as Mrs. McCloy was living there was no disposition of the land under the will. The will was necessarily ambulatory and revocable during her life. There was no estate then vested by the will in Frank Henry, burdened with the condition that Mrs. Mitchell and her children should have a home thereon, when he made such purported declarations. The rights of the parties became fixed upon probate of the will and it evidenced no title until it was probated. Robertson v. Dubose, 76 Tex. 1, 13 S. W. 303, column 2; Miler v. Sims, 171 S. W. 784 (5). A will speaks from the death of the testator. Connely v. Putnam, 51 Tex. Civ. App. 233, 111 S. W. 164. When the declarations were made there could ·have been no election to either give Mrs. Mitchell or her children a home on the land or take the land subject to the partition. By such declarations there was no abandonment of the estate in the land for the sufficient reason there was no estate vested, and there was nothing to abandon. At most, the statement that she or her children should never have a home thereon was but a declared purpose to renounce the right to hold the land burdened with the conditional home for them when the contingency should arise which should vest the title. After the death of Mrs. McCloy, Frank Henry seems to have accepted under the will and hence took the title thereto, subject to the burden imposed. Smith v. Butler, 85 Tex. 126, 19 S. W. 1083; Torno v. Torno, 43 Tex. Civ. App. 117, 95 S. W. 762. A declared intention before such title vested at some future time to abandon it, however positively made, would not operate to terminate it, because after her death by his acceptance he in a more emphatic manner affirmed the existence of his title so burdened and manifested the right under the terms of the will. The mere fact that one of the parties who would have had the right to go there for a home did not seek it because she thought or believed from what Henry said before he was clothed with or assumed the duty of giving such home, that he would refuse, it in no way proved or tended to prove a refusal on his part. The witness' thought or belief did not put Henry in default. The question is not here presented that he did actually refuse when he could act so as to fix the rights of the parties to the land. It may be, had the testimony shown an actual refusal had been made when the will operated, that his pre-declarations could be looked to for the purpose of ascertaining his intent and perhaps as fixing the estate in the land. That question is not here now involved or necessary to decide. We think the court correctly sustained the objections.

[2] We will not discuss the assignments in the order made, but believe we may properly dispose of the issues by giving our construction of the will. The findings of fact by the trial court are assailed. We believe the evidence supports the findings. The eleventh finding of fact is especially excepted to because Frank Henry did refuse to give the appellants a home. This, we take it, is based on the testimony heretofore discussed, and for the reasons given we think there is no error shown in the finding. Error is urged to the holding of the trial court to the effect that the will vested in Frank Henry a fee-simple title, conditioned that the appellants have a home free of charge when they are sick or out of employment. It is asserted the intention of the testatrix was to permit Henry to choose between taking all the land charged with the condition named in the will or to take a proportional part thereof charged with no condition. It is also insisted that the word "refuse" should be read "fail" in the clause, "but if he refuse to give them a home." We may assume that the appellants' contention is correct that the intention of the testatrix was to permit Henry to choose whether he took with or without the conditions. The real question is, When was he to make the choice? Or, when was he required to choose? We do not think the will created a condition precedent. There was to be no choice until the appellants requested a home thereon, when they needed one. It was that condition which gave them a home, and not until then. There was no defeasance of the estate devised until Henry refused to comply with the request. Courts do not favor holding estates in abeyance, but are inclined to that construction that will give the devisee a vested estate. A fair construction of the will, we think, vested in Frank Henry and his heirs at the time of the death of his mother the fee to the entire tract of land, with a condition in the nature of a defeasance. Every estate in lands devised shall be deemed in fee simple if a lesser be not limited by express words or does not appear devised by construction or by operation of law. Article 1106, R. C. S.

"The general rule is that every part of an instrument must be given effect, if possible, but this rule is subordinate to the rule that an habendum should not be construed so as to contradict or defeat the estate granted by the premises, and that a devise of an estate shall be deemed a fee simple, unless limited by express words. This construction of the will gives effect to the intention of the testator as shown by the whole instrument, and this is the ultimate test of the proper interpretation of wills." Winfree v. Winfree, 139 S. W. 36; Weller v. Weller, 22 Tex. Civ. App. 247, 54 S. W. 652.

We do not believe the parenthetical clause was intended as part of the premises of the will or, as for that matter, of the habendum, but was simply thrown in and intended to be part of the proviso or defeasance clause, which when so constructed would read:

"At her death to her son, Frank C. Henry, to have and to hold, his heirs and assigns forever, provided, he comply with the conditions herein mentioned, with the express understanding that his sisters are to have a home whenever they need one, his sister, Jessie Mitchell's three children included. I put this in so my brother's children will all have a home to go to should misfortune come to them in life's journey; but if he refuse to give them a home it shall be divided equally between them. I do not mean he is to support them but a home, free of charge when sick or out of employment."

So understood, it vested Henry with the fee at his mother's death, with the charge thereon in the nature of a condition subsequent operating as a defeasance.

"If the act to be done does not necessarily precede the vesting of the estate, but may accompany it or follow it, if this is to be collected from the whole will, the condition is subsequent. Finlay v. King, 3 Pet. 346, 7 L. Ed. 701; Bowden v. Walker, 4 Baxt. (63 Tenn.) 600."

"Directions for the payment of a legacy or charge on a gift which implies possession of a fund are commonly not treated as conditions precedent; and where it appears from the language of the will and the circumstances that the enjoyment of the property is necessary to enable a devisee to perform the condition, the indication is that the condition is not precedent. A provision that the devise shall be void on nonperformance tends to show that the condition is not precedent, since, if it were, such provision would be unnecessary." Brannon v. Mercer, 138 Tenn. 415, 198 S. W. 253.

Applying these rules, the trial court correctly held the remainder in the fee vested in Frank Henry upon the death of his mother, upon a condition subsequent.

We think the intent of the will is, as expressed, that Frank Henry must have refused to give appellants a home on the land when they go to him, when misfortune overtakes them. This misfortune is particularly defined in the will as part of the defeasance clause, which is, "when sick or out of employment." The home was to be free of charge. It was not meant that he should support them, and does not express that they should receive support from the land, further than a home thereon. If the appellants were in such circumstances as entitled them under the will to go to the land for a home, they were free to do so, or to remain away. They could call upon Henry to permit them that privilege or they could decline to do so. The clause was for their benefit, and it was for them to make the proper demand, or they could waive it. If they waived the right, or did not exercise it, no forfeiture resulted, however much they may have needed a home. Bryant's Adm'r v. Dungan, 92 Ky. 627, 18 S.

W. 636, 36 Am. St. Rep. 618; Lynch v. Melton, 150 N. C. 595, 64 S. E. 497, 27 L. R. A. (N. S.) 684. "Forfeitures are never favored, and, since she failed to claim a defeasance of the estate for the breach of the condition, the title remained with the grantees, subject to the payment of the installment which had matured." Berryman v. Schumaker, 67 Tex. 312, 3 S. W. 46. If appellants went to a home of their own selection, or one furnished by some one else, they were not entitled to a division of the land. That is a state of case not anticipated and provided for in the will. There is no failure to comply when Henry could have done so, hence no defeasance is shown entitling appellants to a partition. We think the case cited by appellants, Lynn v. Busby, 46 Tex. at page 604, supports the trial court in his interpretation.

[3] We do not think we would be justified in changing the word "refuse" to "fail." This would be to change the meaning of the testatrix as gathered from the context of the entire clause of the will. She evidently intended a forfeiture of the estate could be had only upon refusal by Henry when applications for a home were made to him and when the circumstances of the appellants were such as would entitle them to the home. Such change might require the devisee to establish a home for the appellants when there was no necessity or in anticipation of a necessity. Words may be changed when it will effectuate the intent of the testator when that intention is clearly apparent. The change cannot be made to carry out a conjecture or hypothesis. 40 Cyc. 1399–1402. There is no assignment which requires at our hands a determination as to whether the estate in the land inherited by the child of Frank Henry is subject to the defeasance for a noncompliance with the conditions of the will. The trial court, by his judgment, has fixed a charge on the fee in the interest of appellants under the terms of the will. Whether the rule in Haring v. Shelton, 103 Tex. 10, 122 S. W. 13, will apply after the death of Frank Henry, we do not undertake to say at this time. It may be the condition should not be treated as a mere covenant, to be performed by Frankie Henry and her mother, Lizzie Henry. We take it the purpose of the judgment was to leave the rights of the parties to be determined under future conditions and to hold there was no forfeiture by Frank Henry under the conditions of the will before his death, and that none could be so declared for any of his acts or conduct during his life, after his death.

We believe the judgment of the trial court should be affirmed.