**MARTIN et al. v. BROSIG et al.**

No. 8585.

Court of Civil Appeals of Texas. Austin.

Feb. 2, 1938.

Rehearing Denied Feb. 16, 1938.

A. K. Doss and Sayles & Sayles, all of Abilene, for appellants.

Harris & Harris and M. E. Sedberry, all of San Angelo, for appellees.

## McCLENDON, Chief Justice.

This suit is in form one to construe the joint and mutual will of Julius H. Brosig, Sr., and wife, Nellie C. Brosig. Mr. and Mrs. Brosig had eight children, four girls, Georgia (Mrs. Martin), Anna (Mrs. Justice), Hattie (Mrs. Goetz), and Lennie (Mrs. Hartmann), and four sons, E. H., Joe, Roy, and Julius H., Jr. The suit was brought by two of the daughters, Georgia and Anna, against their four brothers and two sisters, their mother, and the independent executors of the will. While, as stated, the form of the suit was to construe the will, two objectives were sought, one to impress with a trust in favor of the estate four parcels of land that had been conveyed to the four sons by Mr. and Mrs. Brosig and devised to them in the will; and to charge the interest of Joe Brosig with an indebtedness of $14,000 alleged to have been loaned him by his father. The will provided for bequests to each of the daughters of $5,000, less stated advancements; and each of the parcels of land devised and conveyed to the sons recited a cash consideration of $5,000 which was in fact in the nature of a bequest or advancement, and the balance of the consideration was represented by notes. The contention of plaintiffs below was, in substance, that under a proper construction of the will each of the eight children was to share equally in the estate; that the value of each of the several parcels of land devised and conveyed to the sons was largely in excess of the expressed consideration; and that in order to carry out the paramount intention and design of the testator a trust should be raised in favor of the estate against each parcel of land to the extent of this excess in value. The trial court sustained a general demurrer to the portion of the petition seeking construction of the will and raising a trust, and, upon plaintiffs declining to amend, dismissed the suit. The appeal is by the plaintiffs below from this judgment of dismissal.

The pertinent portions of the will, copy of which was attached to the petition as an exhibit, read:

"Third. It has been our wish and desire to advance to each of our children, during our life time, the sum of $5000.00 to help them to get a start in their younger days, and have heretofore carried out that wish to some extent, in that we have advanced to our daughter, Anna Justice, wife of Robert L. Justice, the sum of five thousand dollars; to our daughter, Georgia Martin, wife of Howard Martin, the sum of four thousand five hundred forty dollars, leaving a balance of four hundred sixty dollars yet to be paid to her; to our daughter, Hattie Goetz, wife of Diedrich Goetz, the sum of twenty-four hundred dollars, leaving a balance of twenty-six hundred dollars yet to be paid to her. We have not at the time of the making of this will made any advancements to our daughter, Lennie Hartmann, wife of Adolph Hartmann, so that she has received no part of the five thousand dollars which is to be paid to her.

"Fourth. It is our wish and desire to treat each of our children as near alike in the distribution of our estate as it is possible for us so to do, and as our daughters are married, and, with their husbands, are living in another county than our home county, and whose husbands have interests in the counties of their residence, and in the nature of things their place of residence must be at all times determined by their husbands, we believe that it would be to the best interest of our children for our daughters to take their interest in our estate in money, notes or other personal property, and our sons take their interest in lands; and so believing, in order to carry out our said wish and make proper disposition of our said estate to the best interest of all while we are living and have the power to make disposition and distribution of same in the manner in which we want same distributed, and to the end that each child may share as nearly alike in said distribution as possible, we have had our lands appraised by three disinterested persons who are well acquainted with land values, and based upon said appraised valuation of said lands, we have sold and partitioned said lands between our four sons, that is to say, to E. H. Brosig, Joe Brosig, Roy Brosig and Julius H. Brosig, Jr., and have executed and delivered deeds to each of said sons to their respective portions of said lands, each interest set out by metes and bounds in deeds dated March 20, 1933, the possession and use of said lands to be retained by us to a future date, in accordance with the terms of said

deeds as specifically set out in each of said deeds of conveyance.

"In each of said deeds of conveyance is recited a consideration of the payment of Five thousand dollars cash, receipt of which is acknowledged therein. In explanation of that recitation, we wish it understood that it was not intended by us that said part of the consideration should be paid, but that same should be considered as the advancement to each of our said sons to cover and match the advancement of five thousand dollars heretofore made and to be made to each of our said daughters above named.

"In the conveyance to our son, Roy Brosig, he executed to us four notes, note number one (1) for four hundred ($400.00) dollars, note number two (2) for sixteen hundred ($1600.00) dollars, note number three (3) for one thousand ($1000.00) dollars, and note number four (4) for seventeen hundred fifty ($1750.00) dollars, note number 4 payable in annual installments of one hundred twenty-five ($125.00) dollars each. All of said notes are secured by a vendor's lien upon the land conveyed to him. Notes numbers 1 and 2 bear interest from their 'accrual date' at 7% per annum, and are secured by a first and superior vendor's lien on said land to notes numbers 3 and 4. Notes numbers 3 and 4 are to bear interest from their 'accrual date' at the rate of 5% per annum. All of the interest in all of said notes is to be payable annually, and said notes are fully described in our deed of conveyance to our said son, Roy Brosig.

"In the conveyance to our son, Joe Brosig, he has executed to us four notes, notes numbers 1, 2 and 3 being each for the principal sum of one thousand ($1000.00) dollars, and note number 4 for the sum of seventeen hundred fifty ($1750.00) dollars. Said note number 4 is to be payable in annual installments of one hundred twenty-five ($125.00) dollars each, and all secured by a vendor's lien upon the land conveyed to him. Notes numbers 1 and 2 to bear interest at 7% per annum from their 'accrual date', and are secured by a first and superior vendor's lien to the lien securing notes numbers 3 and 4. Notes numbers 3 and 4 are to bear interest at the rate of 5% per annum from their 'accrual date', and all of said notes are fully described in the deed of conveyance to him, and all interest on said notes is to be paid annually as it accrues.

"In the conveyance to our son, Julius H. Brosig, Jr., he has executed three notes, all fully described in our deed of conveyance to him. Note number 1 for two thousand ($2000.00) dollars bears interest at 7% per annum from its 'accrual date', and is secured by a first and superior vendor's lien to the lien securing notes numbers 2 and 3. Note number 2 of said series is for the sum of one thousand ($1000.00) dollars, and note number 3 for the sum of seventeen hundred fifty ($1750.00) dollars, and said notes 2 and 3 bear interest at the rate of 5% per annum from their accrual date, interest payable annually as it accrues, and the principal of note number 3 is payable in annual installments of one hundred twenty-five ($125.00) dollars each.

"In the conveyance from us to our son, E. H. Brosig, he has executed three notes, note number 1 for two thousand ($2000.00) dollars, and bears interest at 7% per annum from its 'accrual date', payable annually as it accrues, and is secured by a first and superior lien on the land conveyed to him; note number 2 is for one thousand ($1000.00) dollars, and note number three (3) for seventeen hundred fifty ($1750.00) dollars. Said notes 2 and 3 bear interest at the rate of 5% per annum from their 'accrual date', said interest payable annually as it accrues, and note number 3 is payable in annual installments of one hundred twenty-five ($125.00) dollars each from its 'accrual date', and said notes 2 and 3 are secured by a second lien on the land conveyed to him, and all of said notes are fully described in our said deed of conveyance to him.

"Fifth: In the event we have not paid to each of our daughters the full amount of the five thousand ($5000.00) dollars which we have given or purposed giving as our advancement to each of said daughters at the time of the death of the first of us to die, then and in that event we set aside all of the 7% interest bearing first vendor's lien notes given by our said sons as hereinabove mentioned, or so much thereof as may be necessary to pay to our said daughters their full advancement of five thousand dollars, and hereby direct and empower our said Executor or Executors to sell, assign and transfer said first lien notes and the liens securing them to our said daughters or to such of them as are willing to accept such transfer and assignment in payment of any amounts that may be due them to complete their advancement of five thousand dollars, or they are authorized to sell, assign and transfer said notes to any person, firm or corporation, or they are authorized to borrow money on them and the lien securing said notes for the purpose of paying to our

said daughters, or either of them, any amount of said five thousand dollar advancement that may not have been paid at the time of the death of the first of us to die, it being our wish, and we so direct, that any portion of the five thousand dollar advancement to each of our daughters that may be unpaid at the time of the death of the first of us to die be as promptly paid to them by our Executor or Executors as same can be paid without sacrificing our estate, or any part thereof.

"Sixth: After the payment of our just debts, including expenses of our last sickness and burial, the expenses of a monument, and all sums or sums that may be owing our said daughters on the advancement of five thousand dollars to each of them, as hereinabove provided, then we direct that our Executor or Executors shall pay to the survivor of us, during his or her life, the income from the balance of the estate, or so much thereof as may be necessary for the support and maintenance of such survivor, and if the income from said estate be not sufficient to properly maintain such survivor, our said Executor or Executors are empowered and authorized to sell and convert any and all property into cash, as they may think best, for said purpose, and they are authorized to invest the proceeds of such sale in good paying securities, as to them may seem best, and they are authorized to reinvest and change the investment from time to time until the death of the survivor, at which time all property, real, personal and mixed, that may remain at the death of such survivor, shall pass to and become the property of our eight children, they to share and share alike therein; and our Executor or Executors are directed to make partition and distribution of said property among our said children in accordance with this provision of our will.

"Seventh: Should either of our children die before the death of the first of us to die, or should either of our children die after the death of the first of us to die and before the death of the survivor, and should such child or children leave surviving a child or children, such child or children shall take the portion of our estate the parent would have taken under this, our will, if alive.

"Eighth: It is our cherished wish that each of our children shall aid our Executor or Executors in carrying out our wishes, as expressed in this will, and in order, if possible, to insure this, it is our will and we do now here expressly provide and make it a condition precedent to the taking, vesting, receiving or enjoying of any property, benefit, or thing whatsoever under and by virtue of this our will, that no such child or children shall in any manner contest the probate of this our will or contest the same, or any part or clause thereof in any judicial proceeding; and we further will and provide that should any such child or children so contest or question, or in any manner aid in any such contest or question, he or she shall thereupon lose or forfeit all right to any benefit and all right or title to any property or thing herein, directly or indirectly, devised or bequeathed to him or her; and every such right, title, property or thing is now by us expressly given, devised and bequeathed to and shall thereupon vest in such of our children herein as do not so question or contest or give aid in such questioning or such contest of this our will or the probate or any clause or provision thereof, in the same proportion as the value in which they otherwise take in value of our estate under this will. This provision of this will, however, is not intended to apply to any portion of the five thousand dollar advancement to each of our children as hereinabove set out, it being our wish and desire, even if any child should contest this will, or any of its provisions, that such child shall receive any portion of the advancement of five thousand dollars hereinabove provided for which may be unpaid at the time of the death of the first of us to die, regardless of whether such child contests this will or any part thereof, or otherwise."

The ninth paragraph names independent executors without bond to carry out the provisions of the will. The petition shows that the deeds to the four sons which were executed by both Mr. and Mrs. Brosig, and were in accordance with the provisions of the will, bore date March 20, 1933. Some of these deeds were acknowledged on April 7, 1933, the date of the will; others were acknowledged later, and all of them were filed for record on December 21, 1935. Mr. Brosig died November 14, 1935. The will was probated December 2, 1935, and the independent executors therein named were appointed and qualified, and the estate was in course of administration.

The petition alleges that it was not the intention of Mr. and Mrs. Brosig that

either of their sons should gain an advantage over any of the other children, but that all should share equally in the estate. The values of the several parcels of land are alleged in the petition as follows: The portion of E. H. Brosig, $26,-775, or an excess of $17,020 over the stated consideration; the portion of Joe Brosig, $24,920, or an excess over the consideration of $15,170; the portion of Roy Brosig and J. H. Brosig, Jr., each $38,955, or an excess of each over the consideration of $29,205. The allegation of the petition with reference to this overvaluation reads: "That it was the fixed and settled purpose, intent, deed and will of the said Julius H. Brosig, Sr. and Nellie C. Brosig that each of their eight children should share equally in their property and estate and not that the sons should be favored and preferred over the daughters, but that the appraised valuation of said lands made by other parties, on which testators based their devise and partition of their estate, was grossly erroneous and greatly undervalued said lands, and was a false, artificial and erroneous basis for the distribution of their estate and contrary to their real intent and purpose."

The value of the estate over and above the notes referred to in the deeds to the four sons was alleged to have inventoried $18,405, of which $7,504.60 was cash on deposit in banks and $10,541 was live stock.

The language of the will is clear, explicit, and unambiguous. In so far as its express terms are concerned, no possible doubt is left as to its proper interpretation. That the testator intended to make an approximately equal division of his property between his eight children is clear. It is equally clear that he had deliberately determined the manner in which the division should be made  He wished to advance each of his children $5,000. The advancements to the daughters were to be in money; and those to the sons in real estate. The reasons for this manner of division were expressly and explicitly stated; and the method by which he arrived at the valuation of the real estate was also explicitly stated. This method was to have the land appraised by disinterested appraisers, which the will asserted had been done; and that based upon this appraisement "we (testator and his wife) have sold and partitioned said lands between our four sons * * * and have executed and delivered deeds to each of said sons to their

respective portions of said lands, each interest set out by metes and bounds in deeds dated March 20, 1933." The will further showed the notes executed by each of the sons; prescribed the date from which they are to bear interest, and showed that the use of the land was to be retained to a future date. The terms of the will are precisely in accord with the terms of the several deeds, which according to their date and the date stated in the will had been executed 18 days prior to the date of the will.

We are unable to construe the devises of the real estate to the sons, in so far as they were devises, as other than specific. To make them such, more apt language could hardly be employed. The apportionments to the sons furthermore were more than devises. To the extent at least of the consideration represented by the notes, they constituted sales in which the absolute fee-simple title passed to the grantees. This the will recognized by stating that, "we have sold * * * said lands," clearly announcing that the transactions with the sons were closed and entirely executed.

The testator recognized that there might be some complaint or dissatisfaction on the part of some of his children with regard to the manner in which he had made the distribution. In order to guard against this and to insure that the distribution as made by him should not be disturbed, he provided in the eighth paragraph that any contest of the probate of the will or of the will itself, "or any part or clause thereof in any judicial proceeding," should bar the child contesting of any share in the estate other than the $5,000 advancement. This clause was inserted, as stated therein, "to insure" "that each of our children shall aid our executor or executors in carrying out our wishes, as expressed in this will."

The effect of permitting the introduction of extraneous evidence to show a conflict on the one hand between the expressed intention of the testator to divide his property as nearly as possible equally among his children, and on the other the specific devises of the real estate to his sons, would be none other than the admitting of parol testimony to contradict the plain, unambiguous expressed language of the testator, to guard against which he had taken extreme precaution.

We do not think it necessary or advisable to attempt a review of judicial

decisions applicable to the conclusion we have reached. The general rule here applicable is concisely stated in a note in 94 A.L.R. at page 39, as follows: "Where a will contains no ambiguity, latent or patent, and can be carried into effect without the aid of extrinsic evidence, such evidence is not admissible to show the intention of the testator or to give the language of the will a meaning different from that which the law attributes thereto."

This note contains a very comprehensive citation of decisions upon the general subject here under discussion, many of which are from Texas courts.

■ There is no ambiguity in the language of the will under discussion, either patent or latent. Its terms are clear, exact, and specific, and no room is left for doubt as to the intention of the testator. The fact that in making the division he did not accomplish the objective of substantial equality among his children, in no way militates against his expressed intention to have the property divided in the exact and specific manner in which he has divided it. The language employed cannot be construed as authorizing any different division to effectuate the expressed objective of substantial equality. He asserts that he has used means regarded by him as proper and effective to that end, and has consummated this division in so far as the real estate is concerned. The deeds, copies of which are attached as exhibits to the petition, corroborate and confirm this consummation. This division cannot be questioned through the medium of construction. It can only be questioned in a judicial proceeding to set aside, on some ground recognized by the law, the express wish of the testator as stated in the will and his express act as evidenced by his deeds. We are unable to reach any conclusion other than that to grant the relief sought by appellants would in effect require a contest of the provisions of the will and a setting aside of the deeds.

■ We have already adverted to the fact that, in so far as concerns the consideration for the deeds evidenced by the notes, the transactions constituted a sale. This necessarily involved the concurrence of the several vendees who obligated themselves to pay for the land in accordance with the terms of the deeds. We seriously doubt the power of the courts to impose a greater obligation upon the grantees than that which they have voluntarily assumed, unless with their consent. The effect, therefore, of affording the relief sought would be to set aside the conveyances and pertinent portions of the will altogether, and throw the conveyed real estate into the general estate of the testator. Clearly we think this could not be done without both a contest of the will and setting aside of the deeds upon some valid ground recognized by the law.

Appellants rely upon the following authorities: Gallagher v. Redmond, 64 Tex. 622; McMurry v. Stanley, 69 Tex. 227, 6 S.W. 412; Lake v. Copeland, 82 Tex. 464, 17 S.W. 786; Cleveland v. Cleveland, 89 Tex. 445, 35 S.W. 145; Haring v. Shelton, 103 Tex. 10, 122 S.W. 13; Norton v. Smith, Tex.Civ.App., 227 S.W. 542; Paton v. Baugh, Tex.Civ.App., 265 S.W. 250; Munger v. Munger, Tex.Civ.App., 298 S.W. 470, and George v. Manhattan, etc., Co., 5 Cir., 51 F.2d 28.

There is nothing in the decision in any of these cases which militates against our above conclusion. The instruments there under consideration were essentially different from that at bar. In some of the cases the wills contained conflicting clauses; and they were reconciled. In others the language expressing a desire as to division of property was held to be precatory. An analysis of these decisions would we believe serve no useful purpose. The will under consideration has no inconsistent or ambiguous clauses, and the language employed in making the specific devises to the sons is manifestly not precatory.

■ Appellants contend that the judgment of dismissal was in any event erroneous, since, even if the construction for which appellees contend be correct, the court should have entered a judgment construing the will to that effect; citing the Munger Case above.

In the abstract this contention is correct. However, since the only construction contended for by appellants was one which necessitated setting aside specific bequests and raising a trust in the specific devises, the effect of the trial court's judgment was the same as if it had been in form one construing the will. The error, therefore, if any, is merely one of form and is harmless.

■ Appellants further contend that they were entitled to have adjudicated the issue of the indebtedness to the estate of

Joe. The petition shows that the estate was in administration and in the hands of independent executors, who were made parties defendant to the suit. There was no pleading to show that any request had been made of the executors to bring suit or that they had refused to do so. The asserted cause of action in this regard was not one which inhered in devisees or other beneficiaries under the will, so long as there was an administration pending; and to assert a cause of action in such beneficiaries or devisees it was necessary to allege that the executors had been requested and had refused to bring the suit. Absent such allegation no cause of action was asserted. See in this connection Rylie v. Stammire, Tex.Civ.App., 77 S.W. 626.

The trial court's judgment is affirmed.