LAWRENCE BERGIN ET AL v. MRS. NANNIE LEW BERGIN.

No. A-6833. Decided July 9, 1958.
Rehearing Overruled October 1, 1958.
(315 S.W. 2d Series 943)

84

*Thomas C. Unis, Strasburger, Price & Kelton, Miller & Martin* and *Hobert Price*, all of Dallas, for petitioners.

*Grovers Sellers*, of Sulphur Springs, *Looney, Clark, Moorhead & Mathews*, and *R. Dean Moorhead*, all of Austin, for respondent.

MR. JUSTICE SMITH delivered the opinion of the Court.

The respondent, Mrs. Nannie Lew Bergin, brought this suit asking for a declaratory judgment against the petitioners, Lawrence Bergin, individually and as executor of the estate of Edward G. Bergin, deceased, and the following minor children, beneficiaries under the will: Mary Kay Carothers, Robert P. Bortner, Charles Carothers, Jr., and Chris Carothers, niece and nephews of the deceased. Respondent sought a construction of the will of her deceased husband. She alleged, in substance, that in his will her deceased husband bequeathed to her an interest in 180 shares of stock in the Los Angeles Soap Company, a corporation, and in 960 shares of stock in the Murray Gin Company (stipulated: Murray Company of Texas, Inc.). She alleged further that as a result of a 100 per cent stock dividend, which was declared subsequent to the testator's death, the original 960 shares in the latter company have now been increased to 1920 shares. The will made disposition of other properties. However, it will not be necessary to refer to such properties except perhaps incidentally in connection with a construction of the will. There are three paragraphs of the will with which this Court is directly concerned. They are paragraphs 1, 2, and 5 set out below in Footnote One.[1] The full will is set out in Footnote (1) of the opinion of the Court of Civil Appeals.

1.—(1) "I, Edward G. Bergin, being of well and sound mind, desire the court to appoint my brother, Lawrence Bergin, sole executor of my estate without bond. It is my desire that I bequeath to my beloved wife the sum of $2,000.00 in cash and 180 shares of the Los Angeles Soap Company stock and what stock I may have in the Murray Gin Company of Dallas.

(2) "Under no condition would I want either one of these stocks to be sold unless it is subject to the approval of my brother, Lawrence Bergin. In other words, I am leaving my wife a life interest in these shares and at her death I want to be left equally share and share alike to my beloved nephew, Robert P. Bortner, my beloved niece, Mary Kay Carothers, and my beloved nephews, Charles Carothers, Jr., and Chris Carothers. Also I am leaving to my wife our home at 520 Connally Street and whatever furnishings we might have in same.

(5) In the event that my wife sees fit to marry again I still want the Murray Gin Company stock and the Los Angeles Soap Stock to be transferred at the date of her marriage to Robert Bortner, Mary Kay Carothers, Charles Carothers, and Chris Carothers.

The respondent sought a declaratory judgment decreeing the provision in the will: "Under no condition would I want either one of these stocks to be sold unless it is subject to the approval of my brother, Lawrence Bergin," was void and against public policy.. The basis for this contention being that paragraph 1 of the will standing alone leaves no doubt that respondent was bequeathed an absolute fee simple title to the stock in question. The respondent contends that if what respondent actually obtained was something less than an absolute fee simple estate, then such lesser estate necessarily was created by some portion of the will which had the effect of diminishing the fee simple estate bequeathed in the first paragraph. Respondent contends that the only provisions of the will which could possibly be construed as an intention to create a less estate than the fee simple are the second sentence in paragraph two of the will and the fifth paragraph thereof. Respondent contends that if both provisions are held effective, then their effect is to create in respondent a conditional fee subject to two limitations. In other words, if these provisions are held to be effective, she contends that her title will be divested if she remarries, and, if any of the stock remains unsold at the time of her death or remarriage, her title will be vested in the three nephews and the niece.

The petitioners contend that under the will of the deceased, the stock above referred to was left to the respondent during her life or until she remarried. The contention being that the will created and gave to the respondent a conditional life estate, and that the respondent had no interest in the shares of stock except to receive the income from said shares of stock until she dies or remarries, and that upon her death or remarriage, the petitioners other than Lawrence Bergin, are entitled to the shares of stock in equal proportions. The contention being that the above mentioned subsequent provisions to paragraph one of the will clearly and unambiguously vested a present remainder interest in the nephews and niece at the very time the will was probated.

The case was tried to the court without the intervention of a jury. The facts were submitted by stipulation of the parties.

The trial court rendered judgment to the effect that the respondent, Mrs. Nannie Lew Bergin, has a conditional fee title to the stock in question, and that she had full power to sell or otherwise dispose of the shares of stock in controversy. The Court of Civil Appeals for the Sixth Supreme Judicial District of

Texas, in a divided opinion, has affirmed the judgment of the trial court. 312 S.W. 2d 409.

The trial court judgment answered certain questions propounded by petitioners in their petition for declaratory judgment. The answers were as follows:

"(a)  Plaintiff has full power to sell or otherwise dispose of the 180 shares of stock in the Los Angeles Soap Company, a corporation, and of the 1,920 shares of stock in the Murray Company of Texas, Inc. (referred to in Plaintiff's Original Petition as the Murray Gin Company of Dallas), so long as she is alive and unmarried, without the joinder of anyone, and the provision in the will of Edward G. Bergin, deceased, that such stock can be sold by Plaintiff only if she obtains the approval of the testator's brother, Lawrence Bergin, is null and void since it is an illegal and prohibited restraint upon alienation of the stock.

"(b)  Plaintiff has a defeasible or conditional (which terms the Court deems to connote the same thing) fee title to the stock, and her interest and the interest of her estate thereto terminate upon her death or remarriage, to whatever portion of the stock she owns at the time of her death or remarriage.

"(c)  Upon the death or remarriage of plaintiff, title to whatever portion of the stock plaintiff then owns automatically vests, in equal shares per capita, in the defendants Robert P. Bortner, Mary Kay Carothers, Charles Carothers, Jr., and Chris Carothers, and said defendants then acquire full right and title to such stock and the right to obtain the certificates evidencing such title from plaintiff, in the case of remarriage, or from plaintiff's estates, in the case title is acquired by virtue of plaintiff's death."

In view of these answers and the entry of judgment for respondent, the trial court deemed it unnecessary to pass upon the question of whether the 100 per cent stock dividend declared after the death of Edward G. Bergin constituted income, or became a part of the corpus of the estate. The petitioners properly presented the question in the Court of Civil Appeals. That court did not pass upon the question in view of its holding that the respondent was bequeathed a conditional fee title to the stock in question, and that the attempted restraint on the alienation thereof was void.

■ We have concluded to sustain the contention of the petitioners that the respondent has only a conditional life estate in the stock involved, and that the petitioners, other than Lawrence Bergin, have a presently vested remainder interest therein. Therefore, it will be necessary for this Court to pass upon the point presented here which is to the effect that the trial court erred in failing and refusing to render judgment that the 100 per cent stock dividend above mentioned did not constitute income to which respondent was entitled, but, on the contrary, became a part of the corpus of the estate, and took the same status as the stock which was in existence at the death of Mr. Bergin.

In reaching the conclusion that the petitioners should prevail on all questions presented, we are mindful of the rules to be followed in construing the will in the instant case. The parties are in agreement that this case must be decided upon the basis of the language of Mr. Bergin's will. They further agree that the decision must be based upon the intent of the testator. One of the cardinal rules in the construction of a will is to ascertain and declare the intent of the testator, and, if legal, enforce that intent. See Pritchett v. Badgett, Texas Civ. App., 257 S.W. 2d 776, er. ref.; Bell County v. Alexander, 22 Texas 350, 351; Laval v. Staffel, 64 Texas 370, 372; Haring v. Shelton, 103 Texas 10, 11, 122 S. W. 13.

■ We recognize that a principle to consider is that split ownerships of personal property, such as life estates and remainder interests in personalty are not favored, and that where personal property is involved, as in the instant case, and where as here the first paragraph of the will bequeaths an absolute fee simple estate, such title cannot be carved down or taken away by a subsequent clause which is ambiguous or uncertain in its meaning. Unless the will clearly manifests an intent to convey a lesser title, it will be held to convey an absolute fee title. See Darragh v. Barmore, Texas Com. App., 242 S.W. 714; Wykes v. Wykes, Texas Civ. App., 174 S.W. 2d 333, er. ref.; McNabb v. Cruze, 132 Texas 476, 125 S.W. 2d 288.

■ We take into consideration that it was stipulated that Mr. Bergin drew his own will and, as a layman rather than a lawyer, he cannot be deemed to have used words in the same technical sense that the words might have if they were used by an attorney. Under such circumstances, it is the duty of the court to make an effort to determine what was the actual intent of

the testator. See Gilkey v. Chambers, Texas Civ. App., 146 Texas 355, 207 S.W. 2d 70, 71.

■ In order that effect may be given the entire will, it necessarily must be construed as a whole. The intention of the testator must be ascertained by viewing the will in its entirety and all the provisions of the will must be looked to for the purpose of ascertaining the real intention of the testator, and if this can be ascertained from the language of the instrument, then any particular paragraph which, if considered alone, might indicate a contrary intention, must yield to the intention manifested by the whole instrument. See Darragh v. Barmore, supra; McMurray v. Stanley, 69 Texas 227, 6 S.W. 412.

■ We have examined the will in the light of these cardinal rules and hold that the first paragraph of the will, which, standing alone, would leave an absolute fee title to respondent, cannot destroy the effect of the remaining portions of the will, which plainly provide that respondent shall receive the benefits of the stock only until she remarries or dies.

The respondent argues that the testator said he "wanted" the stock "to be left" to the nephews and niece upon respondent's death, and that such words were precatory rather than directory or mandatory, and that there is nothing of a positive nature contained in the will that would reduce the estate to that of a life estate. It is true that such words as "wanted," "wish," and "desire" in their ordinary and primary meaning are precatory. But, they are often construed as mandatory when used in an instrument admittedly a will or when it appears from the context or from the entire document that they are the expression of the testator's intention in making disposition of his property. See Page's *The Law of Wills*, 3rd Ed., Vol. 1, pp. 199-203, Sec. 91; Langehennig v. Hohmann, 139 Texas 452, 163 S.W. 2d 402; McMurray v. Stanley, 69 Texas 227, 6 S.W. 412.

■ In the instant case the testator admittedly executed a will. He made disposition of his property. He explained his intention when he said in paragraph two that he was leaving his wife a life interest. He followed this statement with the provision that at her death he wanted the stock to go to his niece and nephews. Clearly, the will left a life estate to the respondent, with the remainder to the petitioners other than Lawrence Bergin. In such a situation the general principle of law that life estates in personalty are not favored must yield to the cardinal rule

that the intention of the testator will be enforced if it can be ascertained.

The rule announced in the case of McNabb v. Cruze, supra, has no application to the instant case. In that case the will gave the wife full control of all property, both real and personal, during her life, with full enjoyment and possession. There are no subsequent provisions in the will, such as we have here, which clearly manifest the intention of the testator to create a lesser estate than either a fee title or a conditional fee.

The respondent contends that the provision in the will that "Under no condition would I want either of these stocks to be sold unless it is subject to the approval of my brother, Lawrence Bergin" amounts to an illegal restraint upon alienation and is therefore void as contrary to public policy. This position is based upon the assumption that respondent's title as created by the will was either a title in fee simple absolute or a conditional fee title. Respondent would be correct if such were the status of her title. However, we have held that she has only a conditional life estate in the stock. We, therefore, sustain petitioners' point that the trial court erred in holding that Mrs. Nannie Lew Bergin, the life tenant, had full power to sell or otherwise dispose of the 180 shares of stock in the Los Angeles Soap Company and the 1920 shares of stock in the Murray Company of Texas, Inc., and we hold that she is without such power. See Benson v. Greenville National Exchange Bank, Texas Civ. App., 253 S.W. 2d 918, er. ref., n.r.e.

■ Since we have reached the conclusion that the respondent has only a life estate in the stock and that the nephews and niece have a presently vested remainder therein, we pass to the question of whether the 100 per cent stock dividend declared by the Murray Company of Texas, Inc., subsequent to the death of Edward G. Bergin, constituted income or became a part of the corpus of the estate. The petitioners contend that the 100 per cent stock dividend became a part of the corpus of the estate which would pass to the petitioners upon the death or remarriage of Mrs. Bergin, whichever event occurred first. The respondent on the other hand contends that the 100 per cent stock dividend was not a part of the corpus of the estate, but rather was income to which respondent was entirely entitled; or, in the alternative, was partially income and partially corpus and should be apportioned between the parties upon the basis of the stipulated facts.

The parties agree that no decision in Texas sheds any light on how stock dividends are to be treated when there are life estate and remainder interests in the original stock. It is agreed that the decisions on the question in other jurisdictions have in general fallen into three different holdings. The parties refer to these three holdings as the Massachusetts Rule, the Kentucky Rule, and the Pennsylvania Rule. The majority view of the States which have had the question under consideration supports the Massachusetts Rule. The petitioners urge that this rule should be followed in this jurisdiction. The rule they seek to have us follow awards to corpus (the remainderman) the entire extraordinary distribution or dividend from earnings by way of a stock dividend and the entire dividend to income (the life beneficiary) if it is a cash dividend. No inquiry in either case is made as to time covered by the accumulation of earnings which it represents and no undertaking in either case is made to apportion the benefit in the event the earnings which it represents accrued partly before and partly after the time when the stock became subject to the life tenant. We have concluded to adopt this rule. The rule is stated in the early case fo Minot v. Paine, 99 Mass. 101. In that case, the Court said:

"A simple rule is to regard cash dividends, however large, as income, and stock dividends, however made, as capital."

This rule was followed by the Supreme Court of the United States in Gibbons v. Mahon, 136 U.S. 549, 34 L. Ed. 525. We can see no injustice that would result by the adoption of the rule. We agree with the petitioners that a stock dividend does not distribute property or income. A stock dividend involves no division or severance from the corporate assets. Under the Kentucky Rule, stock dividends are treated the same as cash dividends and all of them are given to the life tenant. We prefer the Massachusetts Rule over either the Kentucky Rule or the Pennsylvania Rule. When it is realized that in the strictest sense a stock dividend is in truth no dividend at all, since it does not amount to a distribution among the stockholders of cash severed from the corporate assets, we can understand why the Massachusetts Rule has been supported and followed in the majority of the jurisdictions which have given consideration to the subject.These jurisdictions are:

Connecticut, Georgia, Illinois, Indiana, Maine, Massachusetts, Michigan, Missouri, Nebraska, North Carolina, Ohio, Rhode Island, New York (by statute), West Virginia, and the District of Columbia. We do not choose to follow the Pennsylvania Rule for the additional reason that it places upon the

courts and trustees and executors the burden of investigating the affairs of the corporation. Under this rule, there is ascertained the total book value of the shares when the split-ownership of the stock is created (in our case at the time of Mr. Bergin's death) and the total book value immediately after the declaration of the dividend. If the latter figure is larger than the former one, the difference between the two constitutes income which in our case would belong to Mrs. Bergin. Respondent contends in her brief that if we follow the Pennsylvania Rule in this case, it would work out like this: "* * * it is stipulated that the book value of each share at the time of Mr. Bergin's death was $33.57, and that the book value after the declaration of the dividend was $20.35 per share. When Mr. Bergin died, there were 960 shares of stock, and with each having a book value of $33.37, the total value was $32,227.20. After the declaration of the dividend there were 1,920 shares, and with each having a book value of $20.35, the total value would appear to be $39,072.00. Under the Pennsylvania Rule, the difference between these two figures, or $6,844.80, would constitute income to which Respondent is entitled, if she is deemed to be only a life tenant. At a book value of $20.35 per share, this would mean that, under the Pennsylvania Rule, Respondent is entitled to receive as her own property slightly more than 336 of the 960 shares that were received as the stock dividend, and that until her death or remarriage she is entitled to the income from the remaining shares."

Respondent argues that to adopt the Massachusetts Rule means the remaindermen are to be unduly enriched at the expense of the life tenant, Mrs. Bergin. We do not agree. What we have here amount to no more than a change in the paper evidences of the proportionate interests of the respective stockholders in the corporate assets. Each stockholder's interest is merely represented by different units. In the instant case, we have 1,920 shares, whereas we had 960 before the 100 per cent dividend was declared. We see no reason why it would not be just and fair to both the life tenant and the remaindermen to decree that the respondent is entitled to the income from the 1920 shares in question until she either remarries or dies, and that upon the happening of either, all right, title, and interest in the shares of stock is in the niece and nephews named in the will.

The judgments of the trial court and of the Court of Civil Appeals are reversed and judgment is here rendered for the petitioners.

Opinion delivered July 9, 1958.

MR. JUSTICE GARWOOD, concurring.

This comment is not intended as a deviation from either the result reached or reasoning followed by the Court. It merely expresses my own reasons as to why the so-called Massachusetts Rule rather than the Pennylvania Rule should apply in connection with stock dividends declared during the existence of a life estate.

As the main opinion correctly states, a stock dividend or stock "split" leaves the stockholder exactly where he was before, except that his interest is expressed in terms of a larger number of shares. Not infrequently, however, a stock dividend coincides with a large accumulation by the corporation of profits which are not distributed in the form of cash dividends, but are retained in the business, with the result that, in fact, as well as on the corporate books, there is a large "surplus" over and above the value of the funds (and other corporate property) corresponding to the capital stock as the latter stood prior to the dividend.

In such a situation it is felt, and with some justice, by the advocates of the Pennsylvania Rule that where the actual accumulation of surplus has occurred in whole or part during the existence of the life estate, the life tenant ought to get the benefit of it by receiving a corresponding portion of the stock issued as the stock dividend instead of being relegated to merely such cash dividends as the board of directors might see fit to distribute. In other words, the theory is that the life tenant has a right to the undistributed profits accumulated during the existence of the life estate, as well as to such profits as are distributed in the form of cash dividends.

The difficulty about this is that it entails too much of an inquiry into the operations of the corporation, with a correspondingly undesirable complication in accounts between the life tenant, remaindermen and the corporation. Since, as stated, the stock dividend has no value significance in and of itself, there is no particular reason to treat it as the occasion for giving the life tenant a share in the undistributed profits. If he is entitled to a share of the undistributed profits at all, then he is entitled to it just as much without a stock dividend as with one; and thus the question is simply whether a life tenant should be allowed both the profits distributed in cash during the life tenancy and

the profits earned during the life tenancy but not distributed. If we thus recognize a right in the life tenant to undistributed profits, a large number of life estates will inevitably involve complicated and difficult problems of accounting, which may run back many years, and perhaps even reach into the propriety of the accounting methods of the corporation concerned. No doubt this is one reason why the Texas Trust Act provides that, in the absence of specific provision by the trustor to the contrary, stock dividends, in the case of trusts, are treated as principal rather than income. See Art. 7425b-29, Vernon's Texas Civ. Stats. Indeed, this provision itself justifies our conclusion to follow the Massachusetts Rule.

Opinion delivered July 9, 1958.

Rehearing overruled October 1, 1958.