Mildred DEEGAN, Appellant,

v.

The FROST NATIONAL BANK OF SAN ANTONIO, Independent Executor of the Estate of Eunice Deegan Ivers et al., Appellees.

No. 15209.

Court of Civil Appeals of Texas, San Antonio.

Jan. 23, 1974.

Rehearing Denied Feb. 20, 1974.

Green, Kaufman & Lanfear, San Antonio, for appellant.

Joe Meador, Banks & Banks, Guy P. Allison, Allison & Davies, San Antonio, for appellees.

CADENA, Justice.

This is a will construction case.

The Frost National Bank of San Antonio, independent executor of the will of Eunice Deegan Ivers, filed this action seeking construction of the will of Aileen Deegan Davis. Named as defendants were the appellant, Mildred Deegan, and Lawrence Deegan, also known as K. L. Deegan Morris. Several beneficiaries under the will of Eunice Deegan Ivers filed pleadings in the case and appear here as appellees, together with Lawrence Deegan and the independent executor.

The question is whether under the last will and testament of Aileen Deegan Davis, the "fee simple" title to certain shares of stock passed to Eunice Deegan Ivers, or whether Eunice Deegan Ivers acquired only a life estate in such shares.

The court below held that Eunice Deegan Ivers acquired a fee simple title to the shares in question under the will of her sister, Aileen Deegan Davis.

Aileen Deegan Davis died on October 17, 1945. Her holographic will, with holographic codicil thereto, was duly admitted to probate.

The pertinent portions of Aileen's holographic will are as follows:

"May 8th—1937
San Antonio, Texas

This is my last will and testament   I live in San Antonio Texas—and wish my sister Eunice Deegan Ivers to be executrix of my estate without bond——   . . .

I give my sister Eunice Deegan Ivers *all* personal belongings such as *car, jewelry, furs, house hold goods, silver rugs,* and wearing apparal [sic] and *property and cash of all nature.*   All cash in banks, stocks and first morgages [sic] at the time of my death.

I direct that my executrix—Eunice Deegan Ivers—pay my mother Mrs. Ordelia West Daniel—Alpine, Texas a monthly income from the income of my estate. The sum of Twenty five Dollars a month as long as she lives—

After the death of my sister Mrs. Eunice Deegan Ivers I wish my entire estate, money, morgages [sic] stock and property of any kind, including jewelry silver, to go to my mother Mrs. Ordelia West Daniel—upon her death it is to be divided between my brothers, John L. Deegan and Lawrence Deegan.

Aileen Deegan Keating

Now

12–23–37–, Aileen Deegan Davis

This written in Texas and does not need a witness."

The holographic codicil to the above instrument is as follows:

"May—13—1938

My Last Will is in this box—written in my own handing write   I give to my husband (J Russell Davis) my equity in my house—2215 W. Mulberry—San Antonio, Texas.   I give to my sister Eunice Deegan Ivers all furniture fine arts, silver, books, and carpets—and dishes.

Aileen Deegan Davis"

If, under Aileen's will, Eunice Deegan Ivers received only a life estate in the 1,685 shares of stock in question (the only personalty mentioned in Aileen's will which is still identifiable), such property passed under such will to Aileen's brothers, John and Lawrence, with each brother receiving 842½ shares; and appellant, Mildred Deegan, the widow and sole heir of John, would be the owner of 842½ shares. If, instead, Aileen's will vested the absolute title to such shares in Eunice Deegan Ivers, then title to such shares would pass to the persons named as beneficiaries in the will of Eunice Deegan Ivers, who died in 1971, some three and one-half years after the death of John.

■   All the parties agree that life estates in personalty are not favored, and that in order for a will to be construed as creating a life estate in personalty, with a remainder over, the intention to do so must be clearly and unequivocally expressed. Bergin v. Bergin, 159 Tex. 83, 315 S.W.2d 943, 946 (1958).

■■   The rules relating to construction of wills are well settled, although, as is usually the case with general rules, their application to specific facts and circumstances can present difficulty. The basic principle is that a court should ascertain, and give effect to, the intention of the testator as expressed in the will. In searching for the testator's intent, courts are to consider the entire instrument, giving effect to every part of it, if this is possible without doing violence to the language of the instrument. It is also said that, in the event of conflict between provisions of the

instrument, the general intent of the testator, derived from a consideration of the will as a whole, shall prevail over a specific intent shown by the language of a particular clause. See, generally, Alamo National Bank of San Antonio v. Hurd, 485 S.W.2d 335, 338 (Tex.Civ.App.—San Antonio 1972, writ ref'd n. r. e.).

It is clear that in the original will Aileen expressed the intention that upon the death of her sister, Eunice Deegan Ivers, the entire estate, ". . . money, morgages [sic] *stock* and property of any kind, including jewelry silver . . ." (emphasis added) should pass to the mother of testatrix, to be held by the mother during her lifetime, and that upon the death of the mother the title to such property should vest in the brothers of testatrix. This is an unequivocal expression of an intent that Eunice's enjoyment of the property was to be limited to her lifetime. To reach a contrary result it would be necessary to place exclusive emphasis on the fact that, in the preceding words of gift to Eunice, the testatrix did not use terms such as "for life," "during her lifetime," or words of similar import. But it is impossible to place such emphasis on such absence of "life estate" language in that portion of the will without completely ignoring the clear expression of intent that on the death of Eunice the property should pass to Mrs. Daniel and, upon her death, to John and Lawrence Deegan. Such a construction would do violence to the injunction that we should, if possible, give effect to all of the language of the instrument. Construing the language as making a gift of a life estate gives effect to every provision of the will.

We must, of course, consider the codicil as a part of the will. The codicil does contain language of outright gift to Eunice, but such language is limited to ". . . furniture fine arts, silver, books, and carpets—and dishes." Nothing is said in the codicil which relates to the shares of stock, and nothing in the codicil is inconsistent with the intention, expressed in the original instrument, of limiting Eunice's interest in the shares of stock to a life estate.

We are mindful of the fact that the portion of the will which we have construed as showing a clear intent that, on the death of Eunice, the property should pass to Mrs. Daniel is introduced by the words "I wish." But, as the Supreme Court pointed out in *Bergin*, where a layman draws up his own will, it will not be deemed that he used words in the same technical sense that such words would have been used by an attorney. "It is true that such words as 'wanted', 'wish', and 'desire' in their ordinary and primary meaning are precatory. But they are often construed as mandatory when used in an instrument admittedly a will or when it appears from the context or from the entire document that they are the expression of the testator's intention in making disposition of his property." 315 S.W.2d at 947.

Here, as in *Bergin*, the first language of gift bequeaths an absolute "fee simple" estate. Here, as in *Bergin*, in subsequent language the testatrix made it clear that the gift to Eunice was but a life estate. The only difference between *Bergin* and the case before us is that in *Bergin*, in the paragraph following the use of language of outright gift, the testator used the term "life interest." Here, the testatrix, without using such term, espressed the same intention by language of "gift over" upon the death of Eunice. A gift "to A for life, and upon his death to B" expresses the same intention, and has the same effect, as a gift "to A and upon his death to B."

This is not a case where an attempt is being made to carve down an absolute gift by subsequent language which is ambigu-

ous or uncertain in its meaning. Here the language of the will clearly and expressly manifests an intent to give to Eunice an interest which would end upon her death.

■ The judgment of the trial court is reversed and judgment is here rendered declaring that: (1) under the will of Aileen Deegan Davis her sister, Eunice Deegan Ivers, acquired only a life estate in the shares of stock mentioned in Aileen's will; (2) under the terms of such will, John L. Deegan and Lawrence Deegan acquired a vested remainder; and (3) upon the death of John L. Deegan, prior to the termination of the life estate, his interest passed to his surviving wife, Mildred Deegan, as his sole heir.