COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | § | No. 08-20-00002-CV |
| IN THE MATTER OF THE ESTATE | § | Appeal from the |
| OF | § | County Court at Law No. 2 |
| REVY L. WHARTON. | § | of Midland County, Texas |
| | § | (TC# P18584) |

## **O P I N I O N**

This is a dispute about the interpretation of a will.[1] The decedent, Revy L. Wharton, left a will in which he expressed his "desire" that his majority stake in a company be sold to his business partner, appellant Louise McKay. The will proposed terms of sale in the form of payments to beneficiaries under the will. McKay filed suit against the estate's independent executor to compel the stock sale. On cross-motions for summary judgment, the trial court found that the executor has no legal obligation to sell the stock and that McKay is not a beneficiary under the will. McKay's claims were dismissed with prejudice.

---

[1] This case was transferred from the Eleventh Court of Appeals pursuant to the docket equalization efforts of the Supreme Court of Texas. *See* TEX. GOV'T CODE § 73.001. We follow the precedents of the Eleventh Court to the extent they might conflict with the precedents of this court. TEX. R. APP. P. 41.3.

On appeal and on the limited record before us, we conclude that neither party demonstrated entitlement to complete relief as a matter of law. We conclude that the testator's intent was that his majority ownership interest in the company be sold, on terms stated in the will which would have the effect of bequeathing money to the will beneficiaries. Based solely on the will itself and without any further development of the record, the trial court erred by granting summary judgment that the will imposed no legal obligation for the executor to sell the stock to McKay. Moreover, because the will acknowledges the need to reasonably negotiate certain aspects of the intended transaction, on this record McKay likewise was not entitled to her proposed relief of a court order requiring the executor to complete the sale of stock in accordance with the incomplete terms outlined in the will.

**Background**

Revy Wharton was survived by his two children, Lucille S. Bode and Lawrence R. Wharton, as well as by his brother William Wharton, who has since passed away. Lucille was appointed as independent executor of the will, with all powers of independent executors under the laws of the State of Texas. Other key provisions of the will are attached as an appendix to this opinion.

The decedent's business partner, Louise McKay, filed suit against the executor in an attempt to enforce provisions of the will describing terms for the sale of a majority stake in their business venture. The dispute was presented to the trial court on the following stipulated facts:

1. Revy L. Wharton ("Decedent") died on January 18, 2016, a resident of Midland County, Texas.

2. At the time of his death, Decedent owned a majority interest in a business in California known as Valley Improvement Programs, Inc. ("VIP" or the "Company"). VIP issued 9,000 total shares, which were owned as of the date of Decedent's death as follows:

2

|   | Owner | Shares | Percentage |
|---|---|---|---|
| a | Revy L. Wharton | 6,000 | 66.67% |
| b | William Wharton[] | 1,000 | 11.11% |
| c | Lucille Bode | 1,000 | 11.11% |
| d | Louise McKay | 1,000 | 11.11% |

3. Decedent's valid Last Will and Testament, dated January 14, 2016 (the "Will"), was admitted to probate and Lucille S. Bode was appointed as the Independent Executor of the Estate of Revy L. Wharton, Deceased ("Executor") on March 8, 2016.

The parties agreed, and the trial court found, that the language of the will is not ambiguous.

The executor and McKay filed cross-motions for summary judgment. The primary dispute concerned whether the will required the executor to sell to McKay the decedent's majority stake in VIP. The executor also took the position that McKay is not a beneficiary of the will and therefore has no standing to pursue claims against the estate.

The trial court entered a "Final Judgment Construing Will and Dismissing Claims," granting the executor's motion "in all things." The final judgment stated that "Article 1, Section 1.01, of the Last Will and Testament of Revy L. Wharton . . . contains precatory language that does not impose a legal obligation on the Executor to sell Revy L. Wharton's (now the Estate's) majority ownership interest in Valley Improvement Programs, Inc. to Louise McKay," and that "Louise McKay is not a beneficiary" under the will and "does not have an enforceable property right in this Estate." The judgment dismissed all claims with prejudice, and McKay filed a notice of appeal.

**Analysis**

Summary judgments are reviewed de novo on appeal. *See, e.g.*, *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). "A traditional motion for summary judgment requires the moving party to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter

3

of law." *Id.* "Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." TEX. R. CIV. P. 166a(c). "When both sides move for summary judgment, as they did here, and the trial court grants one motion and denies the other, reviewing courts consider both sides' summary-judgment evidence, determine all questions presented, and render the judgment the trial court should have rendered." *Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010).

## I. Standing

As a threshold jurisdictional matter, we will address the question of McKay's standing. In her second amended petition, McKay alleged causes of action against the independent executor for breach of fiduciary duty, conversion, unjust enrichment and constructive trust, declaratory judgment, violation of the will's in terrorem clause, and removal under Estates Code Section 404.0035. The parties agreed to a procedure by which they would present summary-judgment motions to the court regarding construction of the will.

In her motion for summary judgment, the executor asked the trial court to determine that McKay "is not a beneficiary under the Decedent's Will and does not have an enforceable property right in the Decedent's Estate and therefore, lacks standing in this Estate." That motion also asked for a declaration that the will did not impose a legal obligation on the executor to sell the VIP stock to McKay, but apart from the standing argument it did not specifically address and request summary judgment on the merits of each of the various legal claims in McKay's petition (such as whether the executor owed and breached a fiduciary duty to McKay). Even if the construction of the will ultimately might be determinative of McKay's various claims, without specifically addressing those claims in the motion for summary judgment, the only legitimate basis upon which the trial court could have entered its final judgment dismissing all claims, including those not

4

specifically addressed in the motion, would have been a determination that McKay lacked standing to sue. *See* TEX. R. CIV. P. 166a(c) ("The motion for summary judgment shall state the specific grounds therefor.").

A person interested in the outcome of an estate plan has standing in a probate proceeding, including anyone having a property right in or claim against the estate being administered. *See Archer v. Anderson*, 556 S.W.3d 228, 237 (Tex. 2018) (citing TEX. EST. CODE ANN. §§ 22.018(1), 55.001); *see also* TEX. EST. CODE ANN. § 31.001(7) (will construction suit falls within the scope of probate proceedings). Regardless of whether she can prevail on the merits, McKay meets this requirement for standing. She is named in the will. The testator stated in the will his "desire" that his property be sold to her, and she has an interest in acquiring it. An interested party challenging both the interpretation of a will and the distribution of an estate is not required to prove the merits of her claim merely to establish her standing to appear and be heard. *See In re Estate of Redus*, 321 S.W.3d 160, 162 (Tex. App.—Eastland 2010, no pet.) (citing *Baptist Found. of Tex. v. Buchanan*, 291 S.W.2d 464 (Tex. Civ. App.—Dallas 1956, writ ref'd n.r.e.)). Whether the will requires sale of the decedent's stock is the disputed question, and McKay has standing to litigate it. The trial court erred by ruling otherwise and by dismissing McKay's claims which were not challenged on the merits in the executor's motion for summary judgment.

## II. Will construction

"A person who makes a will may . . . direct the disposition of property or an interest passing under the will . . . ." TEX. EST. CODE ANN. § 251.002(b)(2); *see also Boyles v. Gresham*, 153 Tex. 106, 112, 263 S.W.2d 935, 938 (1954) ("The will is but the expression of the desire of and direction by the testator as to what shall be done with the property left by him . . . ."). "An executor is the person or persons nominated by a testator to carry out the directions in the testator's will and to

dispose of the testator's property, according to the will." 1 Ronald R. Cresswell et al., *Texas Practice Guide: Wills, Trusts and Estate Planning* § 4:137 (2018 ed.). When a testator authorizes an executor to sell property, "[a]ny particular directions in the testator's will regarding the sale of estate property shall be followed unless the directions have been annulled or suspended by court order." TEX. EST. CODE ANN. § 356.002(b).

The longstanding rules of will construction require an approach that is distinct from the interpretation of many other categories of legal texts. The objective is to discern and implement the testator's intent as reflected in the instrument as a whole. *See, e.g.*, *Hysaw v. Dawkins*, 483 S.W.3d 1, 7 (Tex. 2016). The method is "holistic" and seeks to harmonize apparent conflicts or inconsistencies in language. *See id.* at 4, 8; *see also Knopf v. Gray*, 545 S.W.3d 542, 545 (Tex. 2018).

The parties' dispute primarily concerns the effect of language used by the testator to describe the proposed sale of the majority interest in VIP to McKay. Section 1.01(A) of the will states: "It is my desire, subject to tax considerations and other considerations to be worked out among the interested parties that, after my death, all of my majority ownership interest in the Company be sold to Louise McKay as described in subparagraph B. immediately below on terms reasonably negotiated." If McKay acquires the stock and later decides to sell it, the will proposes that William, Lucille, and Lawrence, collectively and individually, shall have a right of first refusal to purchase the entire business or any portion that McKay wishes to sell, "for the purchase price she paid for it in the first instance taking into account any enhancement of the Company." The will goes on to state the testator's "desire" and "further wish" that "matters be structured" such that Lucille would receive "a net $50,000 a year for 10 years after my death at no interest" and that Lawrence would receive "$25,000 per year for 10 years after my death at no interest from the

Company which is in addition to the gift in Section 1.02 to him." Under these provisions of the will, once Lucille and Lawrence received $500,000 and $250,000 respectively, whether over a ten-year period or less, then McKay's "purchase price for all of my majority ownership interest shall be paid in full." The testator also stated his "further desire" that his brother William continue to receive his salary of $150,000 a year, "provided that the obligation of the Company to pay this amount in either the form of salary or pension only exists as long as my brother is alive, notwithstanding anything contained herein to the contrary, and is also subject to the continuing profitability of the Company."

McKay contends that these provisions of the will instruct the executor to offer her the opportunity to buy the VIP stock. She emphasizes authorities that implement the intent of the testator despite the use of precatory words such as "desire" and "wish," which she argues can be effective to create mandatory obligations in a will. *See Knopf*, 545 S.W.3d at 547 ("whether language is precatory or testamentary is itself a question of intent"); *Bergin v. Bergin*, 159 Tex. 83, 89, 315 S.W.2d 943, 947 (1958) ("It is true that such words as 'wanted', 'wish', and 'desire' in their ordinary and primary meaning are precatory. But, they are often construed as mandatory when used in an instrument admittedly a will or when it appears from the context or from the entire document that they are the expression of the testator's intention in making disposition of his property."). She thus argues that testators have the right to dispose of property as they see fit, and to avoid defeating the testamentary intent, the will should be interpreted to make the stock sale mandatory.[2]

---

[2] McKay also relies on the will's section headings—including "Intent Regarding California Business" and "Sale to Louise McKay With Right of First Refusal"—to support her argument about the testator's intent. But the will also expressly states in Section 4.05 that "[t]he captions of the various articles, sections and paragraphs of this will have been inserted for convenience of reference only, and the same shall not in any manner be taken into account in construing or interpreting this will." McKay offers no argument to explain why the captions of Section 1.01 should

7

In addition to the parts of Section 1.01 noted above, McKay also argues that the will anticipates the sale of shares to her because it states that William, Lucille, and Lawrence "shall, collectively and individually," have a "right of first refusal" to repurchase all or part of the business, should she later decide to sell. McKay reasons that if it were not the testator's intent that she buy the stock, there would be no reason to also provide that his family should retain the right of first refusal applicable to any subsequent sale of the business. Interpreting the document to make the sale to McKay merely optional would render superfluous a substantial, intricately planned portion of the will. According to McKay, that also would result in a substantial asset being "haphazardly" distributed as part of the residuary estate rather than in accord with the testator's detailed stated wishes.

In contrast, the executor relies upon authorities that recognize the will's text as the source for determining intent, arguing that no binding effect should be given to the will to the extent it used words of mere "request or expectation." *E.g.*, *Byars v. Byars*, 143 Tex. 10, 14, 182 S.W.2d 363, 364–65 (1944). The executor emphasizes the will's use of such precatory language to argue that the portion of the will describing a sale of stock to McKay is advisory and non-binding, and thus there is no legal obligation for the estate to sell the stock. Section 1.01 stated that it was the testator's "desire" that the stock be sold to McKay. It also stated the testator's "desire," "further wish," and "further desire" that the sale be structured to pay certain amounts to his daughter, son, and brother. Further guidance in Section 1.01(C)-(D) about the terms of sale are characterized as the testator's "desire," "intent," and "request."

---

control despite the contrary direction in Section 4.05, and accordingly we disregard the captions as irrelevant to our task of will construction.

The executor contrasts the precatory language used in Section 1.01 with other parts of the will which more definitely express the intent to make a devise. Rather than expressing the testator's "desire," Sections 1.02-1.05 introduce gifts with the phrase "I give . . . ." The will specifically defines "give" to mean "give, devise and bequeath." The executor also relies upon the conditional nature of the proposed sale, noting Section 1.01(a)'s references to the sale being "subject to tax considerations and other considerations to be worked out among the interested parties," the need for additional terms to be "reasonably negotiated," and a sentence introduced by stating "[i]f Louise McKay acquires said company," implicitly acknowledging the possibility that she might not acquire the company. Finally, the executor observes that the will cannot force the sale of property on an unwilling buyer, suggesting that treating the language as mandatory would violate public policy.

A careful review of the complete will leads us to conclude that despite the use of precatory terminology, it was the testator's intention—and his instruction to his executor—that the stock be offered for sale to his business partner, on terms that would effectuate his larger plan for the distribution of the estate to his heirs. Considered in isolation, Section 1.01 does describe a sale of shares to McKay in terms of preference rather than command. But a comprehensive review of the entire will tells another story. In Section 1.01, the testator described a scenario in which the majority interest in VIP would be sold—not in terms of an absolute value for the shares, but rather in the form of "distributions" paid to each of the three primary beneficiaries under his will. Lucille would receive $500,000 paid out over 10 years, and Lawrence would receive $250,000 paid out over 10 years.[3] William would be paid $150,000 annually, as salary or pension, so long as he lived

---

[3] Curiously, in a part of the will not substantially relied upon by either party to support their competing interpretations, the testator stated his desire that the "distributions from the Company" paid to Lucille and Lawrence "be expedited as may be practicable." The testator acknowledged this might not be possible, stating in the will: "If the economics, for whatever reason, do not justify stepping up the amounts or duration of these distributions, then it is my

and the company remained profitable. And the three beneficiaries would equally split the company's working capital on the books.

In addition to these payments from the company, proposed as consideration for the sale of the shares to McKay, the will made other specific, direct bequests. All three named beneficiaries would share in the proceeds from selling a ten-acre desert property, with William and Lucille each taking 37.5% and Lawrence taking the remaining 25%. Lawrence was given $40,000 in cash. William was given $75,000 in cash, a trailer, and guns. Lucille received the residuary of the estate.

The proposed schedule of distributions resulting from selling the VIP stock to McKay reflected the testator's recognition of the value of his majority stake as a major component of the estate and of his bequests to each of his beneficiaries. By contrast, if the company is not sold and the proceeds are not allocated by the testator's professed "desire," "wish," "intent," and "request," McKay contends that the majority stake would fall into the residuary estate. The executor does not expressly argue that the VIP shares are part of the residuary estate, she only argues that she is not legally obligated to sell the shares to McKay. But the executor also does not argue or present any record to suggest that this would not be the consequence of her position. The differences in the distributions of the estate under the two scenarios are as follows:

---

request that they be kept at the $50,000.00 and $25,000.00 respectively for each of Lucille S. Bode and Lawrence R. Wharton for the respective ten year periods previously set forth in this Section." The will did not state that the total amount to be paid to Lucille and Lawrence should be discounted in the event of expedited payments, and if anything it arguably provided otherwise by stating that when "Lucille S. Bode and Lawrence R. Wharton have received $500,000.00 and $250,000.00 respectively whether over a ten (10) year period or less, Louise McKay's purchase price for all of my majority ownership interest shall be paid in full." If there would be no discounting of payments to account for the present value of accelerating future payments, McKay would be economically disincentivized from expediting payments in accordance with the testator's wishes. The implementation of this aspect of the will therefore might be one of the matters that the testator anticipated would be "reasonably negotiated" between the executor and McKay.

|  | **Testator's "desire":** **Sale of VIP stock on will's terms** | **VIP stock falls** **into residuary estate** |
| --- | --- | --- |
| **Lucille** | 37.5% of desert property proceeds Residuary estate<br><br>*$500,000 paid over 10 years* *Equal share of working capital* | 37.5% of desert property proceeds Residuary estate<br><br>*66.67% majority stake of VIP* |
| **Lawrence** | 25% of desert property proceeds $40,000<br><br>*$250,000 paid over 10 years* *Equal share of working capital* | 25% of desert property proceeds $40,000<br><br>*No value for VIP stock* |
| **William** | 37.5% of desert property proceeds $75,000 Trailer and guns<br><br>*$150,000/year salary/pension (for life,* *subject to company's profitability)* *Equal share of working capital* | 37.5% of desert property proceeds $75,000 trailer and guns<br><br>*No value for VIP stock* |

For Lawrence and William, the difference between these two scenarios is stark. Under the testator's desired allocation of proceeds from selling the company, Lucille's extended payout is double the value of her brother's. But if the executor treats the testator's "desire" to sell and distribute the value of the VIP stock as a mere suggestion, and if for that reason the shares instead fall into the residuary estate, the consequences are that a substantial part of the testator's intended bequests to Lawrence and William are erased, and Lucille (the independent executor) instead would keep the entire value of the testator's stake in VIP for herself.

The guiding principle of our construction of the will is that it is our objective to discern and give effect to the testator's intent as expressed in the will's four corners. *See Hysaw*, 483 S.W.3d at 4. In this case, it is evident that the testator did not intend for the entire value of his majority stake in VIP to be solely owned by Lucille, to the exclusion of her brother and uncle. Instead, it was the testator's intent that the value of that stock be liquidated and distributed among his heirs according to the detailed allocation set forth in the will.

Having resolved the fundamental difference between the parties concerning the construction of the will, we now turn to resolution of issues presented by the appeal.

### III.    Executor's motion for summary judgment

In her "Traditional Motion for Summary Judgment – Will Construction," the executor asked the court to "construe the terms of the Decedent's probated Will and find and declare, as a matter of law, that (i) Article 1, Section 1.01, of the Decedent's Will contains precatory language that does <u>not</u> impose a legal obligation on Executor to sell the Decedent's majority ownership interest in Valley Improvement Programs, Inc. to Louise McKay, and (ii) Louise McKay is not a beneficiary under the Decedent's Will and does not have an enforceable property right in the Decedent's Estate and therefore, lacks standing in this Estate."

"As trustee of the property of the estate, the executor is subject to the high fiduciary standards applicable to all trustees." *Humane Soc. of Austin & Travis County v. Austin Nat'l Bank*, 531 S.W.2d 574, 577 (Tex. 1975). As explained above, the will expresses the testator's wish that his majority stake in VIP be sold and that the proceeds be distributed to the beneficiaries named in the will. Any such instruction generally must be respected by the executor. *See* TEX. EST. CODE ANN. § 356.002(b).

Relying solely on the language of the will, the executor asked the trial court to declare the provisions of Section 1.01, which set forth the testator's wishes concerning the VIP shares, as purely advisory and legally non-binding. It was error for the trial court to do so. We need not speculate about what the will would have required if McKay had no interest in acquiring the stock, or if the executor's attempts to negotiate remaining terms had proved futile. No such facts were

before the trial court.[4] We also need not determine whether, consistent with her fiduciary duties, some set of circumstances could have justified the executor in deciding, unilaterally or with the consent of the other will beneficiaries, to dispose of the VIP stock in some fashion other than by selling to McKay. No such circumstances were presented to the trial court.

As a matter of will construction, and without any factual record other than the will and the parties' limited stipulations, the trial court should have denied the executor's motion for a summary judgment declaring as a matter of law that she had no legal obligation to sell the VIP shares to McKay. For the same reason, the record did not support a declaration as a matter of law that McKay is not a beneficiary under the will. We sustain McKay's appeal to the extent it challenges the summary judgment granted in favor of the executor.

## IV. McKay's motion for partial summary judgment

McKay also assigns error to the trial court's denial of her cross-motion for summary judgment. In that motion, she asked the trial court to "declare the specific devise articulated in Section 1.01(A) to be a mandatory provision," and "order the Independent Executor of Revy L. Wharton's Estate to complete the sale of the Estate's stock in Valley Improvement Projects, Inc. to Louise McKay in accordance with the Will." On appeal, McKay argues that the will created a mandatory obligation for the executor to offer her a right of first refusal to purchase the VIP shares.[5]

---

[4] To be clear, we do not purport to prejudge the legal issue of whether the VIP shares fall into the residuary estate if they are not sold to McKay. The will beneficiaries who would be impacted by that consequence are not parties to the appeal, nor is that precise issue before the court.

[5] The executor suggests that McKay's reframing of the issue as a "right of first refusal" in her favor cannot be raised for the first time on appeal. We disagree. The cross-motions for summary judgment jointly raised the issue of the proper construction of Section 1.01 of the will. We consider McKay's appeal to be a permissible refinement of her argument on the issue jointly presented by the parties. *See Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 764 n.4 (Tex. 2014) ("We do not consider *issues* that were not raised in the courts below, but parties are free to construct new *arguments* in support of issues properly before the Court.").

McKay contends that the will demonstrates the testator's intention that the shares be sold to her, and as explained above we do not disagree that was his intent. However, it does not necessarily follow that the sale was mandatory. As argued by the executor, the testator had no power to make such a sale mandatory, at least to the extent a sale is contingent upon McKay's consent to buy. The will acknowledged this possibility that the shares might not be acquired by McKay (e.g., "[i]f Louise McKay acquires said company . . ."). Beyond that, the will also acknowledged that its proposed terms for the sale were not wholly sufficient, and that there would be a need to negotiate additional terms (e.g., "tax considerations and other considerations to be worked out among the interested parties").

For these reasons, we cannot conclude that the testator's intent that the shares be sold to McKay was manifested in the will as a mandatory obligation that the executor sell the shares. If an "agreement to agree" is unenforceable as between two parties who made such an agreement, a testator also cannot impose upon two other parties an enforceable "agreement to agree." *Cf. Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000) ("It is well settled law that when an agreement leaves material matters open for future adjustment and agreement that never occur, it is not binding upon the parties and merely constitutes an agreement to agree.").

McKay correctly notes that Section 1.01 does not expressly provide for payments to Lucille, Lawrence, and William in the event the shares are not sold, but that does not mean that the will entirely failed to provide for that scenario. As McKay acknowledges, the residuary estate is bequeathed to Lucille. Moreover, the other will beneficiaries are not before us, and the record does not reflect what arrangements the independent executor might have made with them, or what legal arguments they might make about the executor's legal obligations in the event the shares are not sold to McKay.

14

We also cannot agree with McKay's characterization of the will as giving her a right of first refusal to purchase the VIP stock. Section 1.01 does reference the concept of a "right of first refusal," but only as a proposed term of the stock sale, and not as a right belonging to McKay. In the event of a sale, the testator expressed his desire to preserving a right of Louise, Lawrence, and William to re-purchase the company from McKay. It is inconsistent for McKay to argue both that the will requires a mandatory sale to her (as proposed in her motion in the trial court) and that it bestows on her a right of first refusal (as now proposed on appeal). If the will had dictated the complete and mandatory terms of an offer to sell stock to her, there would be no need to address the possibility of sale to another party by providing her a right of first refusal.

As stated above, on the record before us we cannot conclude, as a matter of law, that the executor has no legal obligation to sell the VIP stock to McKay in accordance with the testator's wishes. But the record before us likewise does not allow us to conclude, as a matter of law, that the executor is legally obligated to sell to McKay. The will anticipates that additional terms would need to be negotiated to effectuate the testator's intent, and McKay's motion does not establish as a matter of law that there could be no "tax considerations" or other transactional details that might be, from the reasonable perspective of the estate, a legitimate obstacle to carrying out the testator's wishes. Likewise, McKay's motion does not establish that the executor owed her any fiduciary duty, nor does it eliminate the possibility that the executor is actually fulfilling her fiduciary duties to the will's beneficiaries by pursuing a different strategy of distributing the estate. We therefore overrule McKay's appeal to the extent she challenges the trial court's denial of her motion for summary judgment.

## Conclusion

In summary, although the parties presented cross-motions for summary judgment based on their opposed interpretations of the executor's duties under the will, neither party carried her burden to justify summary judgment. Read as a whole, the will demonstrates the testator's intent to distribute a substantial part of his estate through the sale of stock to his business partner, McKay. Because McKay wants to buy the stock, she has standing to advocate on behalf of her interest in the administration of the estate. That said, neither party has presented a record to support judgment in her favor as a matter of law. Standing alone, the will does not support conclusions either that the executor had no legal obligation to sell the stock in accordance with the testator's wishes, nor that the executor is subject to a mandatory obligation to sell. Accordingly, we reverse the judgment of the trial court and we remand the case for further proceedings.

MICHAEL MASSENGALE, Visiting Justice

August 27, 2020

Before Rodriguez, J., Palafox, J., and Massengale, J. (Visiting Justice)
Massengale, J. (Visiting Justice), sitting by assignment

**LAST WILL AND TESTAMENT
OF
REVY L. WHARTON**

\*     \*     \*

ARTICLE I.             SPECIFIC GIFTS

      Section 1.01 -            Intent Regarding California Business:

      A.       Sale to **Louise McKay** With Right of First Refusal.

      I am the principal owner of Valley Improvement Programs, Inc. of Rancho Cucamonga California (the "Company"). It is my desire, subject to tax considerations and other considerations to be worked out among the interested parties that, after my death, all of my majority ownership interest in the Company be sold to **Louise McKay** as described in subparagraph B. immediately below on terms reasonably negotiated. If **Louise McKay** acquires said company and then decides to sell all or part of it to a third party, **William A. Wharton**, **Lucille S. Bode** and **Lawrence R. Wharton**, shall, collectively and individually, have a right of first refusal to purchase the entire business, or the portion she wishes to sell, from **Louise McKay** for the purchase price she paid for it in the first instance taking into account any enhancement of the Company Said right must be exercised and closed within six (6) months after **Louise** McKay gives written notice to **William A. Wharton**, **Lucille S. Bode** and **Lawrence R. Wharton** of her intent to sell.

      B.       Distributions.

      It is also my desire that matters be structured so that the business pays my daughter, **Lucille S. Bode**, a net $50,000.00 a year for 10 years after my death at no interest. It is my further wish that my son, **Lawrence R. Wharton**, receive $25,000.00 per year for 10 years after my death at no interest from the Company which is in addition to the gift in Section 1.02 to him. When these payments have been made and **Lucille S. Bode** and **Lawrence R. Wharton** have received $500,000.00 and $250,000.00 respectively whether over a ten (10) year period or less, **Louise McKay's** purchase price for all of my majority ownership interest shall be paid in full. It is my further desire that the Company continue to pay my brother, **William A. Wharton**, his salary of $150,000.00 a year, provided that the obligation of the Company to pay this amount in either the form of salary or pension only exists as long as my brother is alive, notwithstanding anything contained herein to the contrary, and is also subject to the continuing profitability of the Company.

C.    Application of Distribution.

Further I desire that things be structured so that the monies paid to **Lucille S. Bode** by Valley Improvement Programs, Inc. are all applied to all or part of the purchase price for the business by **Louise McKay**. If either of **Lucille S. Bode** or **Lawrence R. Wharton** shall die during the ten (10) year payment period, or less, for each as prescribed herein, I direct that the survivor of them shall receive the monies otherwise to have been paid to his or her deceased sibling.

D.    Expedite Distributions If Possible.

It is my intent that since, upon my death, I will no longer be receiving distributions from the Company that distributions to both of **Lucille S. Bode** and **Lawrence R. Wharton** be expedited as may be practicable. Thus, I desire that **Lucille S. Bode** receive $50,000.00 or more per year and **Lawrence R. Wharton** receive $25,000.00 or more per year and, I no longer intend for there to be a ten (10) year time limit on distributions to either one of them. If the economics, for whatever reason, do not justify stepping up the amounts or duration of these distributions, then it is my request that they be kept at the $50,000.00 and $25,000.00 respectively for each of **Lucille S. Bode** and **Lawrence R. Wharton** for the respective ten year periods previously set forth in this Section.

E.    Non-Competition

During the pendency of the distributions to **Lucille S. Bode** and **Lawrence R. Wharton**, none of **Lucille S. Bode**, **Lawrence R. Wharton** or **Louise McKay** may compete against the Company or its programs in any way either individually or with any affiliated entity. If any of them does compete against the Company, the purchase of the Company will be then and there be null and void.

F.    Working Capital

In addition to the parameters for the purchase of the Company by **Louise McKay** she must also pay to **Lucille S. Bode**, **William A. Wharton**, and **Lawrence R. Wharton** the amount of the working capital on the books at the date of my death in equal shares.

Section 1.02 - Gift to Lawrence R. Wharton

I give the sum of $40,000.00 to my son, **Lawrence R. Wharton**.

*     *     *

18

Section 1.05 - Real Property

I give the proceeds of sale of my ten acre desert property in Newberry Springs, California in the following percentages, to wit: **William A. Wharton** and **Lucille S. Bode** shall each receive an undivided one-half of seventy-five (75%) of the proceeds and the remaining twenty-five (25%) shall belong to **Lawrence R. Wharton**.

ARTICLE II.          DISPOSITION OF RESIDUARY ESTATE

I give my Residuary Estate as follows:

(a)     To **Lucille S. Bode**;

(b)     And, if **Lucille S. Bode** does not survive me, then to **William A. Wharton** and **Lawrence R. Wharton** in equal shares;

(c)     And, if **William A. Wharton** does not survive me, to **Lawrence A. Wharton**, and if **Lawrence A. Wharton** does not survive me, to his then living descendants who shall take by representation.

ARTICLE III.          EXECUTORS AND ADMINISTRATION OF ESTATE

Section 3.01 - Appointment of Executor:

I appoint **Lucille S. Bode** as Independent Executor of my will and estate. If **Lucille S. Bode** fails or ceases for any reason to serve as Independent Executor, then I appoint **William A. Wharton** to serve as Independent Executor of my will and estate. If **William A. Wharton** is unable to serve as Trustee, I appoint **Steven Wilcox** to serve as Independent Executor of my will and estate.

*          *          *

19

ARTICLE IV.        DEFINITIONS AND GENERAL PROVISIONS

*        *        *

Section 4.02 - Certain Definitions:

As used in this will, the following words and phrases shall have the following meanings:

*        *        *

(g)        "give" means give, devise and bequeath.

*        *        *

Section 4.05 - Effect of Captions:

The captions of the various articles, sections and paragraphs of this will have been inserted for convenience of reference only, and the same shall not in any manner be taken into account in construing or interpreting this will.

*        *        *